[No. 39595.    Department Two.    September 12, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES RAY
POE, *Appellant*.*

*Muscek, Adams, Swayze & Baker*, by *Marshall D. Adams*, for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Joseph D. Mladinov*, and *Eugene G. Olson*, for respondent.

HAMILTON, J.—The defendant-appellant was charged, tried, and convicted on four counts of the crime of unlawful possession of narcotics. He appeals, assigning error to the denial of his pretrial motion to suppress certain evidence. His pretrial motion to suppress was predicated upon the assertion that the evidence in question was the product of an illegal search.

*Reported in 445 P.2d 196.

■ Preliminarily, the state contends that defendant waived his objection to the denial of his motion to suppress by not renewing his objection when the challenged evidence was offered at his trial. We cannot agree. The ruling on the pretrial motion was definite and final in its terms, refusing to suppress the evidence in question. To have objected to the introduction of this evidence on the same grounds after this definitive ruling would have been a useless act. This the law does not require. See *State v. Michaels*, 60 Wn.2d 638, 374 P.2d 989 (1962).

As between the state and the appellant there appears to be no serious dispute as to the background facts. They are as follows: On January 25, 1967, two detectives of the Narcotics Detail of the Tacoma, Washington, Police Department observed appellant in the vicinity of a hospital at about 9 a.m. They placed him under surveillance after he appeared to be glancing into automobiles in the hospital's parking lot. Over a period of 2½ hours they noted similar activities on the part of appellant at the parking lots of six different hospitals and medical clinics. During this time they did not observe any definable criminal activity on appellant's part.

After visiting the last of the above-mentioned parking lots the officers watched as appellant drove into a gas station. He bought some gas and disappeared into the restroom for a short time, then proceeded to the parking area of a shopping center. He entered a store at the shopping center and shortly returned to his car where he sat for 5 or 10 minutes.

At this point we refer to the testimony of Officer Marvik concerning what next transpired.

It appeared that he was going to stay there. We drove our car over and got alongside of him. He was just sitting in the car looking down at something. He wasn't paying any attention to us. I got out of the car, walked up to the driver's window. I could see he was sitting there looking at a comic book. I stood there for some time and he still didn't appear to notice I was there. I looked into the car. Beside him on the seat was a white rag with numerous

small red spots that appeared to be blood stains. The glove compartment of the car was standing open. In the glove compartment another small rag, white, with numerous red spots which appeared to be blood stains. On the top of the rag in the glove compartment was a 50cc. vial commonly used for narcotics.

At that time I rapped on the window. . . .

. . . .

After I knocked on the window Mr. Poe rolled the window down. I asked him for his driver's license. He handed me his driver's license from California and at that time I noticed that his eyes were pinpointed, glassy appearing.

. . . .

I asked him to step out of his car into our car as I wanted to question him.

While in the police car a vial of narcotics and a syringe fell out of appellant's pocket, and he thereafter handed another such vial to one of the officers. Meanwhile, the other officer was searching appellant's car, and found in the glove compartment not only the vial he stated he had earlier noted, but also a medicine bottle containing tablets later determined to be narcotics.

Appellant admitted to the officers that he had been an addict off and on for 10 years, that the seized drugs were his, and that he did not have a prescription for them. Parenthetically, it should be observed at this point, that appellant, although not testifying at the trial, asserted by way of affidavit in support of his motion to suppress that the contents of the glove compartment of his automobile were not visible to Officer Marvik when that officer was standing by the vehicle's window.

The vials and the bottle containing the drugs constituted the evidence appellant sought to suppress. As heretofore indicated, the motion was denied and this evidence was introduced at the trial.

The question presented by appellant's assignment of error is whether the drugs were obtained by the officers as the result of an illegal search and seizure. It is admitted by the state that at the time of the search and seizure, the

officers had neither a search warrant nor a warrant of arrest.

█ The pertinent constitutional standard for searches and seizures without a warrant requires that the search be substantially contemporaneous with and incident to a lawful arrest, and, under all of the circumstances of the case, the search must be reasonable. *State v. Wilson*, 70 Wn.2d 638, 424 P.2d 650 (1967).

█ Looking to the first of these requirements, it must be determined whether the arrest of the appellant was, in fact, lawful. In *State v. Baxter*, 68 Wn.2d 416, 413 P.2d 638 (1966), we stated, at 419, that:

> In cases other than misdemeanors, an arrest can be made without a warrant only when the officer has reasonable grounds to believe that the suspect has committed, is committing, or is about to commit, a felony. . . . If these reasonable grounds exist, the arrest is said to be upon "probable cause," and is lawful. . . . The arrest being lawful, evidence found from a search incident thereto remains untainted. In . . . [*State v. Darst*, 65 Wn.2d 808, 399 P.2d 618 (1965)], we declared, at 812:
>
>> The probable cause essential to support an arrest without a warrant is a belief based upon facts within the knowledge of the arresting officer, persuasive enough to convince a judge that a cautious but disinterested man would also believe the arrested person guilty.
>
> A case of arrest without a warrant necessitates striking a balance between considerations respecting rights of individuals and considerations respecting the responsibility of police officers for the safety and security of all members of the community. The test is one of reasonableness considering the *time*, the *place*, and the *pertinent circumstances*. . . . The standard of probable cause should be given a nontechnical application, *i.e.*, it is to be applied in the light of everyday experience, rather than according to strict legal formulae.

*See Brinegar v. United States*, 338 U.S. 160, 93 L. Ed. 1879, 69 Sup. Ct. 1302 (1949).

Among the pertinent circumstances to be considered is the qualification and function of the person making the

arrest. An officer of a narcotics detail may find probable cause in activities of a suspect and in the appearance of paraphernalia or physical characteristics which to the eye of a layman could be without significance. His action should not, therefore, be measured by what might or might not be probable cause to an untrained civilian passerby, but by a standard appropriate for a reasonable, cautious, and prudent narcotics officer under the circumstances of the moment. *Bell v. United States,* 254 F.2d 82 (D.C. Cir. 1958).

In the instant case the two officers of the narcotics detail had observed activities of the appellant over a period of 2½ hours which aroused a suspicion that he was seeking doctors' bags containing narcotic drugs. This suspicion alone, of course, could not have constituted probable cause for arrest, for the activities involved revealed no outwardly criminal acts. *Henry v. United States,* 361 U. S. 98, 4 L. Ed. 2d 134, 80 Sup. Ct. 168 (1959). However, coupled to the suspicion, and becoming a part of the circumstances surrounding the officers' actions, are the observations of Officer Marvik when he looked through the window of appellant's automobile. At that time, according to his testimony, he noted the white rags dotted with what appeared to be small blood spots, a vial commonly used for narcotics, and appellant's pinpointed and glassy eyes.

Accepting these circumstances as true, which the trial court was entitled to do and which we find are not convincingly refuted, and adding them together erects, in our view, a sufficient factual base upon which a reasonably cautious and prudent narcotics officer could logically believe that the appellant had committed or was in the process of committing a narcotics violation. The circumstances, accordingly, were sufficient to establish probable cause for appellant's then arrest. *Cf. State v. Sullivan,* 65 Wn.2d 47, 395 P.2d 745 (1964), and *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965).

The appellant further contends, however, that the search was unreasonable in that it was general and exploratory in nature, and that its purpose was the seizure of things to be

used "purely as evidence." We find no merit in this contention.

As we have indicated the arrest was lawful. The ensuing search was contemporaneous with the arrest and permissible to prevent the destruction of evidence. *State v. Darst, supra.* The "mere evidence" rule of *Gouled v. United States,* 255 U.S. 298, 65 L. Ed. 647, 41 Sup. Ct. 261 (1921) has never been applied to articles used in the commission of a crime or to contraband and, in any event, the rule has been repudiated in *Warden, Maryland Penitentiary v. Hayden,* 387 U. S. 294, 18 L. Ed. 2d 782, 87 Sup. Ct. 1642 (1967). See *State v. Bullock,* 71 Wn.2d 886, 431 P.2d 195 (1967).

Finding no error in the denial of defendant's motion to suppress, and no other error being assigned, we affirm the judgment of the trial court.

FINLEY, C. J., HILL and NEILL, JJ., and LANGENBACH, J. Pro Tem., concur.