[No. 175-40838-1.    Division One—Panel 1.    October 19, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. EUGENE EDWARD
WOODS, *Appellant*.

*Wendels, Froelich & Power* and *Alan Froelich*, for appellant (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney*, and *James E. Anderson*, for respondent.

SWANSON, J.—Defendant Eugene Woods appeals from a conviction of three counts of grand larceny for the possession of stolen property. The evidence presented by the state to convict the defendant consisted of stolen property uncovered in the defendant's home during searches made pursuant to warrants issued on the basis of evidence obtained by police officers who were examining an illegally parked car in an effort to determine the owner's identity. Prior to trial, the defendant moved to suppress all evidence ob-

tained at the time of the search of the automobile, as well as all further evidence uncovered as a result thereof, on the ground that the initial search was unconstitutional. It is from the denial of the motion to suppress that the defendant appeals.

■ If the search of the automobile was constitutionally impermissible, then the evidence obtained on the basis of that search should have been excluded from the evidence presented at trial. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). (Applicability of *Wong Sun* to the states was made in *Traub v. Connecticut*, 374 U.S. 493, 10 L. Ed. 2d 1048, 83 S. Ct. 1899 (1963).) The search conducted in this case was constitutionally permissible.

The testimony presented to the trial court indicated that the Mercer Island police were investigating a burglary on Friday night, June 15, 1968, when they observed an automobile illegally parked near the burglarized home. The ignition key was in the car, and inquiries at nearby residences revealed the car was alien to the neighborhood. Detective Myers stated that

> normal procedure would be to check the vehicle and see if we can determine the ownership and contact the owner and have them remove it rather than tow it away.
>
> . . .
>
> . . . we initially ran a registration check on Olympia on the license number . . . and we attempted to contact him [the owner] . . . and we were unable to do so.

This occurred over the weekend, and the registered owner could not be contacted at his registered address as it was his place of employment. The detective also stated:

> In trying to determine ownership of the vehicle the officer went to the glove compartment of the vehicle feeling possibly that the registration could be found here and nothing was found, or . . . the only item found was a business envelope containing six color polaroid snapshots of colored TV sets and a handwritten discription of each set.

Since the owner could not be contacted and the car presented a traffic hazard, it was impounded.

The police officers traced the car to a service station through a "lubrication sticker on the door post of the vehicle." The station operator advised that Woods "had brought the car in for service." However, Woods was not the registered owner of the car.

The Mercer Island police then contacted the authorities at Clyde Hill where a recent burglary had occurred. They in turn displayed the snapshots of the TV sets to a burglary victim who positively identified one of the sets. Based on the assumption that the car in which the snapshots were found "belonged" to Woods,[1] a search warrant was obtained to search Woods' home. Various items were found at the defendant's residence during the first search, so the Seattle police were contacted. A second search warrant was then obtained for certain items observed in the home. Subsequently, a third search warrant for a dishwasher was obtained based on information gained from the first search.

■ Assuming, but not deciding, that Woods, who is not the registered owner, has proper standing to question the search, we have the primary issue of whether or not the limited search conducted on discovery of the automobile and the seizure of the photographs which were utilized for obtaining search warrants for the defendant's home violated the Fourth Amendment. The United States Supreme Court has long distinguished between searches of an automobile *and* a home or office. *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). Because a motor vehicle is mobile, in some instances the search of an automobile without a warrant is reasonable, whereas the like search of a home or other fixed property would not be reasonable. *Cooper v. California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788 (1967).

---

[1] The only connection appearing in the record between Woods and ownership of the car in question was his prior possession of it. He was neither the registered owner nor did he claim the car after it was impounded.

But what is reasonable? Despite the existence of numerous Washington State and United States Supreme Court cases involving automobile search, we have found none with a comparable factual pattern. The search here, conducted without a warrant, was not incident to an arrest. Nor was there contraband visible to the officers from the outside of the automobile. Likewise, this was not an inventory or exploratory search after an arrest while the car is impounded. Counsels' briefs and our research have revealed only one Washington case involving a search of a vehicle before the owner was identified, *State v. Gibson,* 76 Wn.2d 814, 459 P.2d 22 (1969). But *Gibson* can be distinguished from the case at bar because, although there was a more extensive search in *Gibson* than here, the evidence discovered in the car was intimately connected with the crime for which the defendants had been arrested only a short time before.

This court feels that it was reasonable for the officers to make efforts to determine the identity of the owner of the automobile. It was illegally parked, with the key in the ignition in violation of a city ordinance,[2] and there was no registration certification properly displayed in violation of a state statute.[3] These facts, coupled with the efforts made by the police officers in checking neighboring residences and contacting the Department of Motor Vehicles justified the intrusion into the vehicle for the limited purpose of obtaining further information as to ownership. It is of no consequence that the officers might have been interested also in seeking evidence regarding a burglary that had been committed in the neighborhood. Neither an extensive search nor an inventory search was conducted; only a limited search into the glove compartment was undertaken.

[2] In June of 1968, ordinance 174 of the city of Mercer Island which adopted by reference RCW 46.61.600 made it a traffic offense to leave a motor vehicle unattended with the key in the ignition.

[3] In June of 1968, RCW 46.16.260 required that the container with the license registration "be securely affixed at some conspicuous position upon the vehicle where it can be easily found, read, and inspected at all times by a person on the outside of the vehicle."

■ Defendant's counsel, in argument before this court, conceded that the officers had a right to open the glove compartment and remove the color photographs of the TV sets. He argues, however, that the police should only have inventoried these items and had no right to seize them, for the pictures were not of themselves evidence of a known crime or criminal activity. We do not agree.

It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

*Harris v. United States,* 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968). We have determined above that the officer was lawfully searching the glove compartment when the color photographs in an envelope were found. The Mercer Island police regarded the photographs as evidence of criminal conduct; therefore, they were seized and subsequently used in their investigation which lead to the apprehension of the defendant. The seizure and subsequent use of the photographs was constitutionally permissible.

Judgment affirmed.

JAMES, C. J., and FARRIS, J., concur.