**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Edward DAVIS, a/k/a James Jeffers, Defendant-Appellant.**

**No. 74–1951.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1975.

Decided April 23, 1975.

John P. Bushemi, Merrillville, Ind., for defendant-appellant.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Joseph S. Van Bokkelen, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before SWYGERT and TONE, Circuit Judges, and PERRY, Senior District Judge.*

PERRY, Senior District Judge.

This is an appeal by James Edward Davis, defendant below, from an order of the District Court denying Davis' motion to suppress evidence, and from the District Court's order sentencing Davis to a two-year term of imprisonment for possession of a firearm by a convicted felon.

On February 27, 1974 a grand jury returned a true bill charging that Davis, after having been convicted of a felony, did knowingly receive, possess and transport, in commerce and affecting commerce, a firearm, i. e., a Smith and Wesson .38 caliber, snub-nosed revolver, in violation of 18 U.S.C. Appendix § 1202(a)(1). Davis pleaded not guilty and demanded a jury trial. Prior to trial Davis filed a motion to suppress the introduction of the firearm into evidence on the grounds that the firearm was seized in violation of the Fourth Amendment to the United States Constitution and was seized without a warrant. The District Court held an evidentiary hearing on the motion, ordered both parties to submit briefs, and, after briefs were filed by both parties, denied said motion in a Memorandum and Order entered October 1, 1974. After a two-day jury trial, Davis was found guilty as charged. On November 15th the District Court entered a judgment of conviction and sentence.

On a clear, cold (32°) day at about 3:25 P.M. on January 28, 1974, Davis, dressed in a long, ankle-length coat and accompanied by one Andre Kyles, was walking north on the sidewalk on the west side of the 1800 block on Broadway Avenue in Gary, Indiana. At the same time, Sgt. Cobie Howard, Jr., of the Gary Police Department was in uniform

---

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

in an unmarked police squad car facing south in the same 1800 block of Broadway Avenue. At the hearing on Davis' motion to suppress evidence, Sgt. Howard testified, in pertinent part, as follows:

(1) While seated in his squad car parked alongside the curb on the west side of Broadway, he observed Davis and Kyles walking northbound together, Kyles walking on the curb side of the sidewalk.

(2) Davis then moved close to a building and began to adjust his shirt and trousers on the right side of his waist-hip area, while Kyles proceeded singly northbound.

(3) At this point, while Sgt. Howard was still seated in the squad car, approximately ten feet away from Davis, he clearly saw that Davis, his coat unbuttoned, was trying to adjust an object evidently located in his waistband. This was the kind of adjustment which Sgt. Howard himself had made on numerous occasions for the purpose of repositioning his service revolver when wearing it, unholstered, in his waistband.

(4) Sgt. Howard exited from the squad car and walked toward Davis because he thought that Davis had a firearm on his person. Davis' behavior appeared suspicious to Sgt. Howard, who was also aware that he and Davis were in a "high-crime" area of Gary.

(5) It appeared to Sgt. Howard that Davis was not aware of Sgt. Howard's presence. Davis then began to close his coat, at which moment Sgt. Howard clearly observed, from a distance of about four or five feet from Davis, the handle and the firing pin of a revolver protruding from Davis' waistband.

(6) Sgt. Howard thereupon closed the distance between himself and Davis, pulled the revolver out of Davis' waistband, and asked Davis if he had a permit to carry the gun. Davis responded in the negative and was thereupon arrested by Sgt. Howard for carrying a pistol without a permit.

Andre Kyles was called as a defense witness and testified, in pertinent part, as follows:

(1) He was walking with Davis, an acquaintance of his, when, at approximately the middle of the 1800 block on Broadway, he saw Sgt. Howard getting out of his squad car.

(2) Kyles walked past Sgt. Howard, crossed the street, and proceeded toward his destination, the Coney Island Restaurant. Before arriving at the restaurant, he happened to look around and see Sgt. Howard putting Davis into the squad car.

(3) Kyles did not observe any confrontation between Sgt. Howard and Davis. In fact, he observed nothing, vis-a-vis Sgt. Howard and Davis, between the time Sgt. Howard got out of the squad car and the moment that Kyles looked around and saw Sgt. Howard putting Davis into the squad car.

Defense counsel called two other witnesses, —the defendant Davis, and one Ollie Mae Barnes, both of whom attempted to contradict the testimony of Sgt. Howard. Miss Barnes testified that she was about three feet behind Davis when Sgt. Howard stopped Davis; that Sgt. Howard drove his car up to the curb, jumped out of the car, ran around the car and up to Davis, and started to pat Davis down. Kyles' testimony contradicted that of Miss Barnes, for Kyles had testified that he was approximately one block away when he happened to look around and see Sgt. Howard with Davis.

The sole issue before us is whether, under the aforedescribed circumstances, the taking of the firearm from the person of Davis constituted an unlawful search and seizure.

 Davis first argues that the seizure of the revolver was unreasonable because the weight of the evidence indicates that Sgt. Howard did not observe the revolver prior to his stopping Davis on the sidewalk. Davis contends that the testimony of the defense witnesses clearly demonstrated that Sgt. Howard's

testimony was untruthful. At the outset, we recognize the venerable principle that it is not for the reviewing court to weigh the evidence or to determine the credibility of witnesses; rather, it is for the trier of facts to resolve conflicts in the evidence and to make determinations of credibility. See, e. g., Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Thus we have repeatedly held that the credibility of witnesses on a motion to suppress evidence is for the District Judge to determine. United States v. Conner, 478 F.2d 1320, 1323 (7th Cir. 1973); United States v. Hilbrich, 341 F.2d 555, 559 (7th Cir. 1965), cert. denied, 381 U.S. 941, 85 S.Ct. 1775, 14 L.Ed.2d 704.

In his Memorandum and Order denying Davis' motion to suppress evidence, District Judge Sharp not only made it abundantly clear that he was well aware of the contrary testimony given at the evidentiary hearing on the motion, but also made specific findings of credibility. Judge Sharp set forth the inconsistencies in the testimony of the defense witnesses, the vital interest of Davis in the outcome of the hearing, and the fact that Davis, when interviewed by a special agent of the United States Treasury Department on January 29, 1974, denied having a firearm on his person the previous day whereas later, during the same interview, he admitted that he did in fact have a firearm on his person the previous day when he was stopped by Sgt. Howard. On this appeal, we are required to accept the District Court's findings unless they are clearly erroneous. United States v. Conner, supra, at 1323; United States v. Ganter, 436 F.2d 364, 368 (7th Cir. 1970). Under the foregoing circumstances, we are disinclined to deem Judge Sharp's findings erroneous, much less clearly erroneous.

Davis relies heavily upon the contention that a statement made by Sgt. Howard to the aforementioned special agent of the United States Treasury Department on January 29, 1974 was so inconsistent with his testimony at the evidentiary hearing that the latter testimony is inherently unbelievable. As re-cited above, Sgt. Howard testified that, while seated in his squad car, he observed Davis trying to adjust an object located in his waistband and suspected that the object was a firearm; and that after he alighted from the squad car he clearly saw the handle and firing pin of a revolver protruding from Davis' waistband. In the aforementioned statement to the special agent, Sgt. Howard said:

"I was parked. As Jeffers [Davis] began to walk away from the building, I could clearly see that the object in his waistband was a gun. I exited my squad car and approached Jeffers [Davis]."

We agree with the Government that regardless of which statement was correct, i. e., whether Sgt. Howard was inside or outside of his squad car when he saw a revolver in Davis' waistband, both statements indicate substantially the same fact, viz., that Sgt. Howard clearly saw a firearm in Davis' waistband prior to his stopping Davis and prior to his pulling the firearm out of Davis' waistband.

■■■■ Davis next contends that even if Sgt. Howard did observe the revolver in Davis' waistband prior to his stopping Davis, the taking of the revolver without further investigation was unreasonable. We disagree. As we said earlier, District Judge Sharp found that Sgt. Howard determined that Davis was acting suspiciously in a high-crime area. Judge Sharp also found that Sgt. Howard saw the handle and the firing pin of a revolver protruding from Davis' waistband prior to the time he stopped Davis and took the revolver from his person. These findings, which we are not disposed to deem erroneous, are sufficient in our opinion to bring Sgt. Howard's actions within the protective holdings of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). We agree with the appellee that when a police officer sees a person acting suspiciously in a high-crime area and carrying a hand gun in his waistband, the presence of danger is apparent. Under such circumstances it

would be unreasonable for us to hold that the officer must be inhibited from disarming the person until he ascertains that the carrying of the firearm is unlawful. Also, the defendant himself having made the gun visible before seizure, there was lacking the invasion of privacy that accompanies a seizure preceded by a search.

Finally Davis contends that the District Court's alternative reliance on the "plain view" doctrine of Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), was misplaced in that (1) the "plain view" doctrine applies only to the seizure of contraband, and (2) Sgt. Howard had not ascertained that the revolver *was* contraband until after he had taken it from Davis' person. In holding, as we do, that the District Court correctly held on the basis of *Terry, supra,* and *Adams, supra,* that the revolver had not been obtained from Davis as the result of an unlawful search and seizure, we do not need to decide whether the District Court was correct in holding that the taking of the revolver could also be sustained upon the "plain view" doctrine of *Harris.*

For all of the foregoing reasons, the District Court's order denying Davis' motion to suppress evidence, and its order of sentence, are each affirmed.