[No. 45908. En Banc. May 29, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. LOUANNE
MARIE LARSON, *Petitioner.*

*Lawrence W. Moore,* for petitioner.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

WILLIAMS, J.—Petitioner Louanne Larson was charged in three counts with forgery, possession of a controlled substance, and possession of marijuana. At a pretrial hearing the trial court granted her motion to suppress the evidence and entered an order dismissing the case. The State appealed, and the Court of Appeals reversed holding that the investigative stop and questioning by the police were proper and the evidence obtained thereby was admissible at the trial. We reverse the Court of Appeals.

The facts giving rise to this appeal are as follows:

In the early morning hours of March 2, 1977, police officers Roberts and Johnson were on routine patrol on "G" Street, which borders Wright Park in the city of Tacoma. It was approximately 3 a.m., a time when use of the park was prohibited. As they proceeded in a southerly direction, they noticed a Volkswagen (VW) stopped on the west side of the street next to the park. Their attention was directed to the car because it was more than 1 foot from the curb in violation of a city parking ordinance, and it was the only car on that side of the street. The officers were aware that in the past several burglaries had been committed in the neighborhood, the most recent being 3 weeks previously, and they considered it a high crime area. They thought it unusual that the car would be parked on that side if its occupants intended to visit someone in the apartments located across the street. Accordingly, they decided to question the persons in the car to find out who they were and why they were sitting in an illegally parked car next to a closed park at 3 o'clock in the morning.

As the police officers drove up behind the VW, the driver started the car and began to pull away, but stopped when the officers flashed the blue emergency light.

Officer Johnson approached the car on the driver's side while Officer Roberts approached on the passenger's side. Petitioner was a passenger in the front seat. Officer Roberts asked her for identification while Officer Johnson asked the two male occupants in the car for their identification. In order to comply with the officer's request, petitioner opened her purse and reached into it to get her wallet. As she did so, Officer Roberts shone his flashlight into the purse. He testified this was done in order to make sure she was not reaching for a weapon. The light revealed a small plastic bag containing what appeared to be marijuana in her purse. After she produced her identification, the officer ordered her out of the car, visually checked her outer clothing for weapons, required her to give him the marijuana, and placed her under arrest for possession of marijuana.

Meanwhile, the two male occupants of the car produced their identification, and Officer Johnson radioed for a check on them. Officer Roberts then searched the car, including the trunk, for narcotics, but discovered none. The officers learned from the radio check that the two male occupants of the car were not wanted by the police, so they were released. A search of petitioner's purse yielded evidence of the crimes of forgery, possession of phendimetrazine, a controlled substance, and possession of marijuana. Petitioner was subsequently charged by information with each of these crimes.

Petitioner moved to suppress all the evidence seized from her purse and certain incriminating statements on the ground that the investigative stop, the request for identification, and the seizure of marijuana, which was the basis for the arrest and search of her purse, violated her Fourth Amendment right to protection against unreasonable search and seizure.

The trial judge granted petitioner's motion to suppress, and in doing so concluded:

[T]he search of [petitioner] was unlawful because there was no well–founded suspicion for the officers to stop the vehicle in question, and there was no well–founded suspicion for the officers to search the contents of [petitioner's] purse or to require her to produce her identification.

The State appealed, and the Court of Appeals unanimously reversed. *State v. Larson,* 21 Wn. App. 506, 587 P.2d 171 (1978).

■ The State contends that the automobile stop was proper for two reasons: (1) because it was parked illegally late at night in a high crime area next to a closed park; and (2) because the driver began to pull away as the officers approached. It then concludes that since the stop was lawful, the officers properly asked the petitioner, a passenger in the vehicle, to provide identification. We disagree.

The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. *Davis v. Mississippi,* 394 U. S. 721 [22 L. Ed. 2d 676, 89 S. Ct. 1394] (1969); *Terry v. Ohio,* 392 U. S. 1, 16–19 [20 L. Ed. 2d 889, 88 S. Ct. 1868] (1968). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person," *id.,* at 16, and the Fourth Amendment requires that the seizure be "reasonable."

*United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). *See Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979). This rule applies to the stopping of an automobile and the detention of its occupants. *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). The present case poses the question of whether it was reasonable under the circumstances for police to stop the vehicle in which petitioner was a passenger and to demand that she provide identification.

■ Where the driver of an automobile commits a traffic offense, the stopping of the automobile and detention of the driver in order to check his driver's license and automobile registration are not unreasonable under the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. at 663, 99 S. Ct.

at 1401. The record indicates that the police believed the automobile in this case was improperly parked when they first noticed it. Assuming arguendo that a parking violation can be characterized as a traffic offense, as contemplated in *Prouse,* then the police officers would have acted properly in stopping the car and questioning the driver on the ground that it had been illegally parked.[1] However, a stop based on a parking violation *committed by the driver* does not reasonably provide an officer with grounds to require identification of individuals in the car other than the driver, unless other circumstances give the police independent cause to question passengers. To hold otherwise would restrict the Fourth Amendment rights of passengers beyond the perimeters of existing case law.

Since in our opinion the parking violation served as a basis for stopping and questioning the driver only, the court must examine the grounds for the stop *independently of the ground that the car was illegally parked* and determine whether those grounds provide a sufficient basis for stopping the car and asking *passengers* for identification. Apart from the parking violation, the remaining grounds asserted for the stop were that the car was parked in a high crime area near a closed park late at night and that it

---

[1] In actuality, neither of the officers questioned the driver of the vehicle about the parking violation. Although an officer stated at the suppression hearing that the vehicle in which petitioner sat was unlawfully parked, *i.e.,* "over a foot away from the curb," the officer indicated that it was not his purpose to issue the driver or passengers a citation for this infraction. One would question whether this "traffic violation" played any role at all in the officers' decision to stop and question the passengers in the car.

There are other similar inconsistencies in the record which lead one to question the officers' motives at the time of the stop. Undisputed testimony at the suppression hearing indicates that the officer who demanded identification from the petitioner treated her rudely and made comments to the effect that she was a prostitute or a streetwalker. It is curious that the officer who conceded that he looked into petitioner's handbag to search for weapons did not remember making any further search of her person for weapons after her arrest or searching the two male suspects for weapons. Finally, one wonders what proper motive the officer had for searching the entire car, including the trunk, when the driver of the vehicle was neither searched nor considered a suspect in any crime other than improper parking.

started to pull away as the police car approached. Nothing in the record indicates that the persons in the car acted in a suspicious manner; indeed, the officers apparently neither asked what they were doing nor gave them a chance to say what they were doing before identification was demanded. Moreover, the officers had received no report of criminal activity in the area that night. In fact, according to the testimony of one of the officers, the last such report had been some 3 weeks earlier. They likewise had no indication the occupants had been cruising the area in contemplation of a criminal act or that the car had been stopped in the street other than momentarily.[2] Thus, as far as the officers knew, the car could have been stopped there only long enough to discharge a passenger or for any other of many legitimate reasons.

By the officers' own testimony, the decision to stop the car was made when it was first observed and before the officers approached it and flashed the blue light. Thus, the fact that thereafter the driver started the car and began to drive away had no part in the decision to stop it. In any event, the driver did not attempt to elude the police but stopped immediately when the light was flashed.

When considered in totality, therefore, the circumstances known to the officers at the time they decided to stop the car did not give rise to a reasonable and articulable suspicion that the occupants were engaged or had engaged in criminal conduct, *Brown v. Texas, supra,* but at best amounted to nothing more substantial than an inarticulate hunch. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). This does not meet the constitutional criteria of reasonableness for stopping a vehicle and questioning its occupants.

In *Brown v. Texas, supra,* the United States Supreme Court sheds light on the limits of "reasonableness" in the

---

[2]The record does not indicate whether the VW lights were on or off.

context of the situation where a police officer stops an individual and requires that the individual provide identification on the ground that the officer suspects the individual is engaged in criminal activity. In *Brown,* the court set aside a conviction for refusing to comply with a policeman's demand that defendant identify himself pursuant to a Texas statute making it a crime to refuse such identification on request. Texas Penal Code Ann. § 38.02 (Vernon 1974). Two officers observed Brown and another individual walk away from each other in an alley in an area of El Paso noted for a high incidence of drug traffic. Both officers believed the two men had been together or were about to meet until the patrol car appeared. An officer stopped Brown because the situation "'looked suspicious and we had never seen that subject in that area before.'" *Brown v. Texas,* 443 U.S. at 49, 99 S. Ct. at 2639. However, the officers did not claim to suspect Brown of any specific misconduct.

The court in *Brown* recognized that

> in some circumstances an officer may detain a suspect briefly for questioning although he does not have "probable cause" to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. *United States v. Brignoni–Ponce, supra,* at 880–881; See *Terry v. Ohio, supra* at 25–26. However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Delaware v. Prouse, supra,* at 663; *United States v. Brignoni–Ponce, supra,* at 882–883; see also *Lanzetta v. New Jersey,* 306 U.S. 451 [83 L. Ed. 888, 59 S. Ct. 618] (1939).

*Brown v. Texas,* 443 U.S. 47, 51, 61 L. Ed. 2d 357, 99 S. Ct. 2637, 2641 (1979).

Viewing the facts leading up to the stopping of Brown, the court held that the application of the statute to detain Brown violated the Fourth Amendment "because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct." (Footnote omitted.) *Brown v. Texas,* 443 U.S. at 53, 99 S. Ct. at

2641. *See Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979).

Although *Brown* does not tell us what constitutes a reasonable suspicion sufficient to justify stopping an individual, it does indicate a set of facts that *do not* meet the constitutional test for detaining an individual.

The facts of the present case fall within the pattern of *Brown.* Like the suspect in that case, a major cause for suspecting the present petitioner of criminal conduct lay in the fact that petitioner was located in what the police described as a high crime area. It is beyond dispute that many members of our society live, work, and spend their waking hours in high crime areas, a description that can be applied to parts of many of our cities. That does not automatically make those individuals proper subjects for criminal investigation. Further, as in *Brown,* the officers in this case did not claim to suspect the individuals in the car of any specific misconduct, excluding a possible parking violation on the part of the driver. Finally, as the decision in *Brown* indicates, a suspect's leaving at the time that a police cruiser arrives does not necessarily lead to the conclusion that it is reasonable to suspect that person of a crime.

Accordingly, we believe that the police officer who detained the petitioner for the purpose of requiring her to identify herself did so in violation of the fourth amendment to the United States Constitution and Const. art. 1, § 7, because none of the circumstances preceding the officer's detention of petitioner justified a reasonable suspicion that she was involved in criminal conduct. *Brown v. Texas, supra.* Indeed, it appears that she was detained because of her presence in a particular location, even though she had a lawful right to be there, rather than because of any suspicious conduct. We agree with the trial judge that police officers should be encouraged to investigate suspicious situations, but they must not do so without proper legal foundation.

■ Since we hold that the initial stop was improper, all evidence seized as a result of that stop must be suppressed.

*Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Woods,* 3 Wn. App. 420, 475 P.2d 573 (1970).

The Court of Appeals is reversed, and the judgment of the trial court is reinstated.

ROSELLINI, WRIGHT, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.

HOROWITZ, J. (dissenting)—The issue in this case is whether an investigatory stop of a vehicle which led to the discovery of evidence of a crime violated the petitioner's Fourth Amendment rights. The trial judge ruled the stop was illegal and suppressed the incriminating evidence. The record does not sufficiently disclose, however, whether the judge believed the testimony of the police officers regarding the specific circumstances which led them to make the stop. I believe the testimony, if accepted at face value, is adequate to meet the constitutional standard for an investigatory stop of a vehicle and its occupants, and would therefore remand for the entry of a supplemental finding by the court on the credibility of the officer's testimony.

Several facts in the case require statement and emphasis. As pointed out in the opinion of the Court of Appeals, the car was parked in a no parking zone more than 1 foot from the curb. As the State points out, the car was thus in fact parked in violation of two city traffic ordinances. Tacoma Municipal Code 11.26.020, 11.28.180. The defendant's brief makes no claim to the contrary.[3] The vehicle occupied by the defendant was the only car parked on the west side of the street, immediately adjacent to Wright Park. The officers noted there were three persons in the car. Since the park was closed at night, the occupants of the car could not lawfully have been in the park. On the other hand, it appeared to the officers that the car would not logically

---

[3]The testifying police officer although aware that the VW was parked more than 1 foot from the curb, which he characterized as a "traffic violation" was apparently unaware that the VW was also parked in a no parking zone.

have been parked there if the occupants were merely visiting in the neighborhood. The car was directly across the street from an apartment house which, to the personal knowledge of one of the officers, had recently been burglarized several times. They both knew, in fact, that the area around the park had a particularly high burglary rate. The officers regularly patrolled that area and it was unusual to see a car parked in that location at that time in the morning. When the marked police car approached, the parked automobile began to move away.

The trial judge concluded the stop, the request for identification, and the act of shining a flashlight into petitioner's purse were unconstitutional. Specifically, the court found:

II. There were no facts presented by the police officers which showed that they either had a well–founded suspicion that criminal activity was occurring or that they had a well–founded suspicion that the defendant was armed or had a weapon in [sic] her person.

The court concluded:

[T]he search of [petitioner] was unlawful because there was no well–founded suspicion for the officers to stop the vehicle in question, and there was no well–founded suspicion for the officers to search the contents of [petitioner's] purse or to require her to produce her identification.

The court thus granted petitioner's motion to suppress all evidence seized from the purse and flowing from the arrest, on the ground the original stop, seizure of marijuana, and arrest were unlawful. The court subsequently entered supplemental findings and conclusions that suppression effectively terminated the case and required dismissal. The State appealed from the suppression order, and the Court of Appeals unanimously reversed. *State v. Larson,* 21 Wn. App. 506, 587 P.2d 171 (1978). The appellate court correctly applied the rule of *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1973), that an investigatory stop to require a person to identify himself and explain his

activity is justified when the officer has a well founded suspicion that illegal conduct may be occurring. The court held the facts testified to by the police officers here met the test for a valid stop. This court granted the petition for discretionary review to determine the lawfulness of the stop.

I agree with the Court of Appeals that if the facts testified to are believed, the requisite grounds for an investigatory stop were present and no constitutional violation occurred. If the stop and seizure of the marijuana were lawful, then the subsequent arrest, full search of the purse, and seizure of petitioner's incriminating statements were also lawful. As discussed below, however, the record is arguably unclear and inadequate to determine whether the trial judge found the officers' testimony regarding the facts and circumstances of the incident credible.

## I
### LAWFULNESS OF THE STOP

Stopping an automobile and detaining its occupants for even a brief time constitute a seizure within the meaning of the Fourth and Fourteenth Amendments. *Delaware v. Prouse,* 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). A limited investigatory stop may be justified on less than probable cause, however, if the circumstances create an articulable and reasonable suspicion in the police officer's mind that the vehicle or an occupant is subject to seizure for violation of the law. *Delaware v. Prouse, supra* at 656–57; *United States v. Brignoni–Ponce,* 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). *See also Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In evaluating the circumstances giving rise to the officer's belief, the objective standard to be applied is whether the articulable facts available to the officer at the moment of the seizure warrant a person of reasonable caution and in light of the officer's experience, to believe that the action taken is appropriate. *Terry v. Ohio, supra* at 21–22, 30; *State v. Todd,* 78 Wn.2d 362, 367, 474 P.2d 542 (1970). The lawfulness of the stop in this case thus depends on whether the

articulable facts available to the two Tacoma police officers at the moment they stopped the VW warranted men of reasonable caution, with their law enforcement experience, to believe that criminal activity "may be afoot." *See Terry v. Ohio, supra* at 30.

If the officers' testimony at the pretrial hearing is in material respects credible, this standard is met. The officers here regularly patrolled the area of Tacoma around Wright Park and knew it suffered a high burglary rate.[4] They discovered the occupied VW parked in the manner above described next to a closed park and immediately across from an apartment building which had been repeatedly burglarized. The physical location of the car made it highly unlikely, in the officer's view, that at 3 o'clock in the morning, the driver was merely visiting in the neighborhood. Moreover, as the marked patrol car approached, the driver attempted to drive away.

Under the totality of the circumstances described to the extent known to the police officers, the officers had a reasonable suspicion sufficient to justify the officers to make an investigatory stop of the VW to determine the people in the car and the reasons for their presence in that particular area at that time of the morning. The traffic offense noticed by the police officers was very minor but the VW's proximity to an apartment building recently burglarized, and to a closed park at 3 a.m. in an area with a particularly high

---

[4]The fact that a defendant's suspicious activity occurred in a high crime area was recited as a fact significant in the determination that a police officer had a reasonable suspicion justifying seizure in *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); *State v. Gluck*, 83 Wn.2d 424, 518 P.2d 703 (1974); and *State v. Devine*, 9 Ore. App. 424, 496 P.2d 51 (1972). *See also United States v. Orozco*, 590 F.2d 789 (9th Cir. 1979); *United States v. Davis*, 514 F.2d 1085 (7th Cir. 1975). The presence of other significant facts in a high crime area helped create probable cause to arrest or search and seize materials in *United States v. Davis*, 458 F.2d 819 (D.C. Cir. 1972); *United States v. Johnson*, 467 F.2d 630 (2d Cir. 1972); and *United States v. Valentine*, 427 F.2d 1344 (8th Cir. 1970). In this case, the officers did not merely testify in general terms that the area near Wright Park was a high crime area. They were aware of the specific menace of burglaries and thefts in the vicinity. Their reasonable suspicion regarding the vehicle's occupants was explicitly related to the knowledge of burglaries nearby.

burglary rate, it being unusual to see a car parked in that location at that time of morning, and the driver's attempt to leave as the officer's marked patrol car approached, provided articulable and reasonable grounds for a reasonable suspicion in the officers' minds that the occupants of the car were involved in criminal activity, even though at that time there was an absence of probable cause for arrest.[5] A brief investigatory stop for the purpose of determining the identity of the car's occupants and their reasons for being there would thus be warranted.[6] *State v. Gluck, supra; State v. Serrano,* 14 Wn. App. 462, 464–65, 544 P.2d 101 (1975); *People v. Moreno,* 67 Cal. App. 3d 962, 134 Cal. Rptr. 322 (1967); *State v. Tucker,* 286 Ore. 485, 595 P.2d 1364 (1979). *See also Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972).

*Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979), relied on by the majority, does not prevent the police from stopping a vehicle and questioning the occupants merely because part of the officer's suspicion otherwise justifying the seizure was based on the fact that the suspicious activity took place in a high crime area. In *Brown,* "the officers did not claim to suspect appellant of any specific misconduct," *Brown v. Texas, supra* at 49; the Supreme Court thus felt "[t]he flaw in the State's case" to be "that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct." *Brown v. Texas, supra* at 51–52. In this case, unlike *Brown,* many other articulable factors besides the fact that this activity took place in a high crime area supported the officers' reasonable

---

[5]Once the lawfully obtained evidence of a greater offense, possession of marijuana, was obtained when petitioner produced identification, see page 653, *infra,* it became unimportant for the officers to further pursue the matter of the known traffic offense.

[6]It reasonably appears that the officers had a reasonable suspicion that all three occupants of the car, not just the driver, were engaged in criminal activity in this high burglary area at 3 a.m. Thus, they were justified in asking the people in the car for identification. *State v. Davis,* 12 Wn. App. 32, 527 P.2d 1131 (1974).

suspicion—the placement of the car under the circumstances described, the time of night, and the fact that when the marked police car apparently became visible to the occupants of the car they started to drive away.

More analogous to the facts in this case are those in *State v. Tucker, supra,* in which the Oregon Supreme Court upheld the use of evidence of a burglary obtained when the defendant, a bicyclist, was stopped after running a stop sign. The court said that there was

> no reason to hold that such a stop is improper or invalid simply because, in addition to probable cause to arrest for a specific offense (or to stop for purposes of issuing a citation), the officer also has a suspicion which contributes to the decision to make the stop. Nor do we believe that determining the validity of an otherwise authorized stop on the basis of the officer's purpose, or primary purpose, in making it would be either practical or desirable.

*State v. Tucker, supra* at 493.

In *Tucker,* the Oregon court rejected a proposed holding that evidence of other offenses discovered during a traffic stop be inadmissible unless the officer would have stopped the vehicle for the traffic offense alone or there was reasonable grounds for suspicion of criminal activity even if the traffic offense had not occurred. The court stated that:

> Any time evidence of criminal activity came to light during a routine traffic stop, trial courts would be called upon to decide whether the officer had noticed anything about the violator or the vehicle beyond the fact of the violation itself and, if so, whether he would have made the stop upon the hypothetical supposition that he had noticed nothing. The Constitution does not require such a strained approach.
>
> For these reasons we conclude that neither reason nor authority supports the argument that an otherwise authorized stop is itself rendered invalid by the arresting officer's hope or belief, even if that hope or belief is one of the reasons for his action, that evidence of some other offense may come to light during the course of the encounter. We agree with those courts which have expressly approached the question of the validity of a

stop or arrest on an objective, rather than a subjective, basis.

*State v. Tucker, supra* at 495.

The majority's analysis of the facts of this case in footnote 1 includes precisely the type of subjective examination condemned in *Tucker.* The majority concedes that the totality of the circumstances apparent to the officers must be considered in assessing the existence of a reasonable suspicion to make a stop. The facts recited above clearly justify such a suspicion. It must be remembered in reviewing the reasonableness of the officer's suspicion that the police officer has special experience and knowledge. "[T]he arresting officer's special expertise in identifying criminal behavior must be given consideration." *State v. Cottrell,* 86 Wn.2d 130, 132, 542 P.2d 771 (1975). In considering the existence of probable cause to arrest, this court said in *State v. Todd, supra* at 367, that "probable cause for arrest should be examined in the light of the arresting officer's special experience, and . . . the standard should be, not what might appear to be probable cause to a passerby, but what would be probable cause to a reasonable, cautious, and prudent officer." *See also Brown v. Texas, supra; State v. Poe,* 74 Wn.2d 425, 445 P.2d 196 (1968).

In light of the importance of an officer's ability to articulate the reasons justifying an investigative stop, the demeanor of the officer while testifying may be critical. Such is the case here. Petitioner attacks the credibility of the officers' testimony and their motives, and contends the officers' sole reason for stopping the VW was to harass its occupants, as demonstrated by Officer Roberts' alleged rudeness, and that this lack of valid grounds for the stop was apparent from the officer's demeanor on the witness stand. If the officers showed sufficient grounds to stop the VW by credible testimony, the alleged rudeness of Officer Roberts during or after the arrest, while unprofessional, does not affect the validity of the stop and arrest. If, on the other hand, petitioner's testimony in this regard made the officers' testimony less believable to the trial court, the State

may have failed to establish the requisite ground for the stop.

The trial court made no finding regarding the officers' purpose in making the stop. Moreover, the court's very brief findings and conclusions throw insufficient light on the question whether the court found the officers' testimony credible. In his oral ruling at the suppression hearing, the trial judge appeared to find the testimony believable, but the facts legally insufficient.

> I want to say that I think police officers ought to be encouraged to investigate these situations and . . . nothing that I say or do in this ruling is intended to discourage them, but I think under the law . . . they didn't have a proper legal foundation to ask for identification before they inquired further of her, so I am going to hold the stop and arrest was invalid.

Even in light of the court's oral ruling, the findings and conclusions are ambiguous on the issue of the credibility of the police officers' testimony. To avoid any question about the matter, I would therefore remand for entry of a supplemental finding on this question. If the court found the testimony was not credible and thus failed to meet the requisite standard for an investigatory stop as set out above, then the investigatory stop and ensuing seizure of evidence would be unlawful and the order suppressing the evidence could be affirmed. If, however, the court found the testimony was credible, in material respects, the order could be vacated because the requisite standard for the stop was met and, as discussed below, the officer's request for petitioner's identification and the seizure of the marijuana would also be lawful.

## II
### REQUEST FOR IDENTIFICATION

When a police officer has adequate grounds to make an investigatory stop, he may reasonably ask the individual stopped to identify himself and explain his activity. *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). *See also Brown v. Texas*, 443 U.S. 47, 61 L.

Ed. 2d 357, 99 S. Ct. 2637 (1979); *United States v. Brignoni–Ponce,* 422 U.S. 873, 881–82, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *Terry v. Ohio,* 392 U.S. 1, 5, 23, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1973).[7] Petitioner contends that even if the officers had sufficient grounds to stop the car and ask the driver for his identification, they had no grounds to ask for her identification. The majority agrees with this contention. I cannot.

The investigatory stop, if lawful, was made upon a reasonable suspicion that the occupants of the car were engaged in unlawful conduct. According to the officers' testimony, the stop was not for the mere purpose of ticketing an illegally parked car. Asking each occupant to identify him or herself was therefore an inherent purpose of the stop. *See for example State v. Gluck, supra.* We have found no authority, and the majority cites none, for the proposition that under these circumstances a police officer must limit the investigation to the driver of the car and may not ask all occupants of the car to identify themselves. The lawfulness of the request for petitioner's identification therefore depends solely on the lawfulness of the investigatory stop. If the trial court found the police testimony was credible, both the stop and the request for identification would be lawful.

### III
#### SEIZURE OF THE MARIJUANA

When Officer Roberts asked petitioner for her identification, she opened her purse and reached into it. He shone the beam of his flashlight into the purse to make sure she was not reaching for a weapon, and in doing so made visible

---

[7]The reasonableness of a request for identification is not dispositive of the question whether a person may be required to answer. *See Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979); *State v. Grant,* 89 Wn.2d 678, 575 P.2d 210 (1978); *Mountlake Terrace v. Stone,* 6 Wn. App. 161, 492 P.2d 226 (1971).

the bag of marijuana. Petitioner contends this constituted an unlawful search, and that as a consequence the resulting arrest, search of the purse incident to the arrest, and seizure of incriminating statements were also unlawful.

In *State v. Regan,* 76 Wn.2d 331, 457 P.2d 1016 (1969), this court held there was no violation of the Fourth Amendment when a police officer shone a flashlight into the interior of a car lawfully stopped for a traffic offense, and thereby discovered seizable matter. Use of a flashlight to light the interior of the darkened car, the court noted, was a rudimentary, nonoffensive, and reasonable act of justifiable caution. Matter discovered in this manner is simply in plain view. *State v. Regan, supra* at 336. *See also State v. Howard,* 7 Wn. App. 668, 502 P.2d 1043 (1972). This view is supported by the overwhelming weight of federal authority that shining a flashlight or other beam of light onto an object which thereby comes into plain view does not itself constitute a search. *United States v. Lee,* 274 U.S. 559, 563, 71 L. Ed. 1202, 47 S. Ct. 746 (1927); *Thompson v. Stynchcombe,* 494 F.2d 48 (5th Cir. 1974); *United States v. Hood,* 493 F.2d 677 (9th Cir.), *cert. denied,* 419 U.S. 852, 42 L. Ed. 2d 84, 95 S. Ct. 94 (1974); *United States v. Hanahan,* 442 F.2d 649 (7th Cir. 1971); *Walker v. Beto,* 437 F.2d 1018 (5th Cir. 1971); *United States v. Kim,* 430 F.2d 58 (9th Cir. 1970); *Marshall v. United States,* 422 F.2d 185 (5th Cir. 1970); *Williams v. United States,* 404 F.2d 493 (5th Cir. 1968); *Dorsey v. United States,* 372 F.2d 928 (D.C. Cir. 1967). *See also Bell v. United States,* 254 F.2d 82 (D.C. Cir.), *cert. denied,* 358 U.S. 885, 3 L. Ed. 2d 113, 79 S. Ct. 126 (1958).

In *United States v. Hood, supra,* a car had been stopped for a traffic offense. As the police officer shone the beam of a flashlight into the car he saw seizable matter lying inside an opened purse and partially opened suitcase. The court held the use of the flashlight did not constitute a search, and the seizable items were in plain view. *United States v. Hood, supra* at 680. There is no logical distinction between the conduct of the officer in *United States v. Hood* and

that of Officer Roberts in this case. Officer Roberts did not ask or compel petitioner to open her purse. She opened it voluntarily, thus exposing its contents to plain view. Officer Roberts' use of the flashlight to illuminate the opened purse and thus protect himself was reasonable and nonobtrusive. The decisions cited above support the view that such conduct does not constitute a search.

Even if it were a search, however, as next appears it would nonetheless be justified as a limited search for weapons. A suspect who has been lawfully detained may be subjected to a limited protective search for weapons when the officer observes conduct which leads him to reasonably conclude that the individual may be armed and dangerous. *Terry v. Ohio, supra* at 30; *Adams v. Williams, supra.* If the officers' testimony is credible, petitioner was stopped because they had a reasonable suspicion that the occupants of the car were involved in criminal activity. It was the middle of the night in a high crime area. Petitioner responded to the officer's request for identification by reaching into her purse. It was reasonable under those circumstances for the officer to conclude petitioner may have been reaching for a weapon, and to take the limited protective measure of illuminating the inside of the opened purse with a flashlight. Such conduct did not violate petitioner's Fourth Amendment rights. *See State v. Serrano,* 14 Wn. App. 462, 469, 544 P.2d 101 (1975).

In summary, if the officers here had an articulable and reasonable suspicion that the occupants of the car were involved in illegal conduct, then the stop, the request for identification and the seizure of the marijuana were lawful. The subsequent arrest, search of the purse, and seizure of petitioner's incriminating statements were also thus rendered lawful. The officers' testimony, if credible, was sufficient to establish the lawfulness of the stop. I would therefore remand the case to the trial court for entry of a supplementary finding on the credibility of the officers' testimony. If the court did not find the officers' testimony as to the material facts believable, the order suppressing the

evidence could be affirmed. If, however, the court found the testimony was believable, the order could be vacated and further proceedings commenced.

I therefore dissent.

UTTER, C.J., and HUNTER, J. Pro Tem., concur with HOROWITZ, J.