[No. 26541-2-III.   Division Three.   December 4, 2008.]

THE STATE OF WASHINGTON, *Appellant*, v. MARK JOSEPH AFANA, *Respondent*.

*Steven J. Tucker, Prosecuting Attorney,* and *Andrew J. Metts III, Deputy,* for appellant.

*Dennis W. Morgan*, for respondent.

¶1  KULIK, A.C.J. — The question we decide is whether a police officer seized a driver and passenger in a legally parked car when the officer approached and requested identification. Here, Deputy Miller approached Joseph Afana's legally parked car and asked Mr. Afana and his passenger, Jennifer Bergeron, what they were doing and requested identification. As Mr. Afana began to drive away, Deputy Miller discovered a warrant for Ms. Bergeron and stopped Mr. Afana. A search incident to Ms. Bergeron's arrest uncovered illegal drugs. The trial court suppressed this evidence, concluding that Ms. Bergeron was unlawfully seized when Deputy Miller asked for identification. We disagree. Under these facts, the deputy's actions and request for identification did not constitute a seizure. Accordingly, we reverse the suppression of the drug evidence and remand.

## FACTS

¶2  On June 13, 2007, at 3:39 AM, Deputy Miller noticed a legally parked car at the corner of Rimrock and Houston in Spokane County. Deputy Miller pulled his car behind the parked car and shined his spotlight into it, revealing two occupants in the vehicle. Deputy Miller then approached the vehicle and asked the occupants what they were doing. The driver, Mr. Afana, responded that they were watching a movie. Deputy Miller asked for identification from both Mr. Afana and the other occupant, Jennifer Bergeron. Mr. Afana gave the deputy his driver's license and Ms. Bergeron gave her name. Deputy Miller wrote down both names, gave Mr. Afana back his license, and suggested they go elsewhere to watch their movie.

¶3 Deputy Miller returned to his vehicle and ran warrant checks on both names. Ms. Bergeron's check came back with a local misdemeanor warrant. Mr. Afana began to pull away. At this point, Deputy Miller activated his emergency lights to prevent the car from leaving. He walked to the car, arrested Ms. Bergeron, and had Mr. Afana exit the vehicle. Deputy Miller searched the vehicle incident to arrest and found a bag which contained methamphetamine, marijuana, and drug paraphernalia. Mr. Afana was arrested and charged with possession of a controlled substance.

¶4 Prior to trial, Mr. Afana brought a CrR 3.6 motion to suppress the drugs found in the search incident to the arrest of the passenger in the vehicle. The trial court granted the motion to suppress and dismissed the case. The State appeals.

## ANALYSIS

¶5 We review de novo a trial court's conclusions of law following a suppression hearing. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). The Fourth Amendment to the United States Constitution protects individuals against unwarranted searches and seizures. Article I, section 7 of the Washington Constitution provides greater protection to individuals than the Fourth Amendment. *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004). A seizure occurs when "an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority." *Id.* at 695. This is an objective standard. *Id.*

¶6 In *Armenta*, the Supreme Court held that an officer's asking for identification during a casual conversation did not constitute a seizure because the officer's request for identification was not accompanied by force or a display of authority, such that the citizens did not feel free to leave. *Armenta*, 134 Wn.2d at 11. A police officer's

manner and tone are important in determining, objectively, whether a person would feel free to leave in a particular situation. *State v. Thorn*, 129 Wn.2d 347, 353-54, 917 P.2d 108 (1996), *overruled on other grounds by State v. O'Neill*, 148 Wn.2d 564, 579, 62 P.3d 489 (2003). Moreover, police are permitted to converse and ask for identification even without an articulable suspicion of wrongdoing. *State v. Young*, 135 Wn.2d 498, 511, 957 P.2d 681 (1998).

¶7 While a request for identification of a pedestrian is not automatically a seizure, the Supreme Court determined that asking for identification from a passenger in a car that was parked more than one foot away from the curb violated the Fourth Amendment and article I, section 7 of the Washington Constitution. *State v. Larson*, 93 Wn.2d 638, 611 P.2d 771 (1980). Based on *Larson*, the request for identification here would be unlawful.

■■ ¶8 However, later, in *O'Neill*, the court stated that "where a vehicle is parked in a public place, the distinction between a pedestrian and the occupant of a vehicle dissipates." *O'Neill*, 148 Wn.2d at 579. *O'Neill* involved a conversation between police and a citizen but did not follow either a parking or a traffic violation. *O'Neill* held that when a car is parked in a public place, occupants of the car should be treated as pedestrians for search and seizure purposes. *Id.* Here, Mr. Afana's car was parked in a public place and Deputy Miller did not seek contact with Mr. Afana and his passenger because of any violation. Based on *O'Neill*, any request that Deputy Miller could lawfully make of a pedestrian, he could make of Mr. Afana's passenger, including asking for her identification. *See id.*

¶9 Later, in *Rankin*, the court held that law enforcement officers were not allowed to ask for identification from passengers for investigatory purposes, during a traffic stop, without an independent basis. *Rankin*, 151 Wn.2d at 699. *Rankin*, however, did not overrule *O'Neill*.

¶10 Here, the trial court based its decision on *State v. Brown*, 154 Wn.2d 787, 117 P.3d 336 (2005). However, in *Brown*, the defendant was a passenger in a vehicle that was

stopped because a police officer believed the vehicle's trip permit was faulty. The result in *Brown* is consistent with the other cases in which the officers made contact with citizens in a car because of a violation.

¶11 In accepting *Brown*, the trial court rejected *State v. Mote*, 129 Wn. App. 276, 120 P.3d 596 (2005). But *Mote* is directly on point.

¶12 In *Mote*, two people were sitting in a legally parked car at 11:45 PM when a police officer approached the car to ask what the occupants were doing. The officer asked for identification from the driver, and for the name and date of birth of the passenger, Curtis Mote. *Id.* at 279-80. Division One makes clear the distinction between stopping a car for a violation, in which case the police want to talk to the person who violated the law, as opposed to making a social contact with people in a parked car, where police want to talk to everyone in the car about what is going on. *Id.* at 289-90. When the police make a social contact with a group of people on the street, they are free to ask for names without their inquiry automatically constituting a seizure. *Id.* at 290-92. Because the purpose of making a social contact with a group of pedestrians is the same as making a social contact with people inside a parked car, it does not automatically constitute a seizure when an officer asks people in a car for their identification. *Id.*

¶13 We agree with the reasoning in *Mote*. *Rankin* did not overrule *O'Neill*. *Brown* simply followed the analysis laid out in *Rankin*. Here, *O'Neill* and *Mote* should control. The passenger in Mr. Afana's car should be treated the same as pedestrians for search and seizure purposes. Under this standard, the court erred by suppressing the drug evidence.

¶14 We reverse the trial court's suppression order and remand.

SWEENEY and BROWN, JJ., concur.

Review granted at 166 Wn.2d 1001 (2009).