[Nos. 39922, 39923, 39921.    Department Two.    July 3, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN JOSEPH
REGAN, JR., *et al., Appellants.**

*In the Matter of the Application for a Writ of Habeas
Corpus of* KENNETH GORDON SMITH *et al., Petitioners,*
v. JACK D. PORTER, *as Sheriff of King County,
Respondent.**

*Reported in 457 P.2d 1016.

*Kroum, Bass & Mack* and *Gary F. Bass,* for appellants (appointed counsel for appeal).

*Charles O. Carroll* and *Robert S. Bryan,* for respondent.

HAMILTON, J.—Appellants and petitioners were charged, tried before a jury, and convicted of grand larceny under RCW 9.54.010(5). They have appealed their convictions and individually filed petitions for writs of habeas corpus all of which have been consolidated for disposition before this court. Their combined efforts raise three primary issues and a number of incidental or secondary issues. The three primary issues are: (1) Whether certain evidence should have been suppressed as the product of an illegal search and seizure; (2) whether certain comments made by the prosecuting attorney during the course of trial were prejudicial; and (3) whether the bounds of due process were transgressed in various respects. Essentially, the secondary contentions fall within the ambit of the third primary issue and, so far as merited, will be discussed under that heading.

The facts and circumstances pertinent to the issues raised may be stated as follows: On the evening of February 10, 1967, two experienced Seattle police officers, R. M. Davis and N. C. Case, were patrolling, by motor vehicle, an exclusive residential area in the city of Seattle. The officers had been partners and assigned to patrol the area involved for more than a year. At about 9:30 p.m., they observed an unoccupied 1956 Oldsmobile parked along the curb of a street at a point where the officers had never before seen an automobile of that vintage parked. Because of these circumstances, the officers observed the license plate, noted it to be a standard plate bearing the number APG 956, checked the number against their "hot sheet" to determine if the vehicle had been reported as stolen, and, upon finding it had not been so reported, proceeded on past the vehicle and down the street.

After proceeding a short distance, the officers recalled that they had failed to check an unoccupied estate which had been the object of recent vandalism. Accordingly, they turned around, retraced their route past the parked Oldsmobile, noted its unchanged condition, and proceeded on to inspect the estate property. The inspection consumed no more than 5 minutes, and the officers, resuming their patrol, again approached the Oldsmobile.

As they neared the automobile for the third time, its lights came on and it began to move away from the curb and down the street ahead of the patrol car. At this time, the officers noticed that the vehicle was occupied by at least two men, that the left taillight was not operating, and that there was now a dealer's license plate fastened over the license plate they had originally observed. The officers then decided to stop the Oldsmobile, and, in response to their signal, appellant Smith, the driver, pulled the vehicle over to the curb. The stop was made in a well-lighted area and just across the street from a street light.

Officer Case, the driver of the patrol car, alighted and approached Smith, who had also alighted from his vehicle. They met at the rear of the Oldsmobile, where the officer asked Smith to produce his driver's license, vehicular registration certificate, and permit to use dealer's license plates. Smith produced only a driver's license. During this exchange, the officer and Smith moved toward the front of the Oldsmobile, and, as a security measure, Officer Case in passing the back seat of the vehicle shined his flashlight into the interior. At this time he observed a large mesh sack on the right side of the back seat with a large white bundle on the floor. He inquired of Smith concerning these items, received an exculpatory answer, and shortly left him and walked around the car to the passenger side.

Meanwhile, Officer Davis had left the right side of the patrol car and proceeded forward along the right side of the Oldsmobile toward appellant Regan, seated as a passenger in the front seat of the vehicle. This officer, too, in passing along the Oldsmobile looked into the rear seat area,

where he noted the mesh sack and the large white bundle. Due to the lighting conditions and because of the proximity of the mesh sack to his side of the vehicle, the officer observed that the sack contained, among other things, several bottles of liquor, two irons, a frypan, and a camera case with a name tag. The officer asked for and received Regan's driver's license, and an exculpatory explanation of the items. With the aid of a flashlight the officer checked Regan's driver's license and also the name tag on the camera case. The latter revealed an address which was located approximately 100 yards from where the Oldsmobile had been originally parked. Appellant Regan was then asked to step out of the car. As Regan complied, his foot struck a ceremonial sword which was on the floor and this, in turn, dislodged a loaded chrome-plated revolver which slid from under the seat onto the front floor mat of the Oldsmobile.

At about this time, Officer Case arrived from the other side of the automobile, saw the revolver, reached in and picked it up, and immediately informed Officer Davis of its existence. Appellants were then told they were under arrest on suspicion of burglary, searched, placed in the patrol car, and advised of their rights under *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

Thereupon, the officers searched the Oldsmobile and found, in addition to the items mentioned above, a second loaded revolver, several items of fur apparel, and a number of pieces of jewelry. The officers then called for a second patrol car to transport appellants to the precinct station, and a tow truck to impound the Oldsmobile. Following appellants' departure, the officers proceeded to the residence address which appeared on the camera case tag, found that no one was at home, and that the house had been entered and ransacked. Sometime after midnight they were able to contact the householder, who advised them that she was the owner of the items found in the sack and white bundle retrieved from the Oldsmobile, and that the various items had been stolen from her premises.

The appellants were then charged with grand larceny

under RCW 9.54.010(5), retained counsel, and were afforded a preliminary hearing on February 14 and 20, 1967, following which they were bound over to the superior court for trial.

Shortly before trial, scheduled for June 13, 1967, after a continuance at appellants' behest from April 26, 1967, appellants moved to suppress all oral and physical evidence obtained from them at the time of their arrest. On the morning of trial an evidentiary hearing was held on the motion. In addition to asserting that their arrest was unlawful, appellants claimed they were denied timely opportunity to contact counsel and that their right to bail was impaired by the lodging of a parole violation detainer. Despite repeated inquiries by the trial court appellants, through their counsel, claimed no other alleged violations of their constitutional rights.

At the conclusion of the evidentiary hearing, the trial court denied appellants' motion to suppress, finding that the officers' observations of the physical evidence in the rear seat area of the Oldsmobile was incident to a lawful arrest for a misdemeanor committed in the officers' presence; that the subsequent arrest for a felony was based upon probable cause; that the search of the Oldsmobile was incident to the felony arrest; and that the physical evidence discovered in the search was not the fruit of any contemporaneous statements made by appellants. The trial court also ruled that appellants had not been denied the opportunity to timely contact counsel; that their right to bail had not been impaired, and that the oral statements made by appellants to the officers prior to the felony arrest and the giving of the Miranda warnings were inadmissible. This latter ruling is not challenged here.

Appellants first assign error to the denial of their motion to suppress. Essentially, their argument in support of this assignment of error is to the effect that (a) the officers' acts of shining their flashlights into the rear seat area of the Oldsmobile amounted to a search; (b) such a search was not a valid incident to the traffic violation for which appel-

lants were stopped; and (c) such a search was not incident to, but preceded and resulted in, the subsequent felony arrest.

We find no merit in appellants' contentions.

■ Although appellants dispute the fact that the left rear taillight of the Oldsmobile was not functioning, they concede that if it was malfunctioning the officers were entitled to stop them for the violation of the motor vehicle code thus occurring in the officers' presence. RCW 46.37.010, 46.37.050(1). This being so, the officers in moving forward to the front of the Oldsmobile to identify the occupants were not required to blind themselves to such contents of the rear seat area of the vehicle as were in plain sight. Indeed, as the officers testified, the act of peering into the rear seat as they moved forward along the side of the vehicle was a standard precautionary measure, essential to protect themselves from possible personal injury from persons or things that might not otherwise have been observed. Consideration being given to the surrounding circumstances—*i.e.,* the officers being in an area with which they were familiar, at night, approaching an unfamiliar vehicle, occupied by two unidentified men, which had been parked at a point where automobiles rarely parked, and upon which vehicle license plates had been switched—it would have been foolhardy for the officers to do less than look into the interior of the vehicle. There is nothing in the constitutional prohibitions against *"unreasonable* searches and seizures" (Italics ours.), or in the purposes served by such prohibitions which condemn such a rudimentary, nonoffensive and reasonable act of justifiable caution. *Cf. Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

A police officer is not required to ignore items of possible evidentiary value which are in plain sight. As stated in *Harris v. United States,* 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968) (per curiam):

> It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Ker v. Cailfornia,* 374 U. S. 23, 42-43

[10 L. Ed. 2d 726, 83 S. Ct. 1623] (1963); *United States v. Lee,* 274 U. S. 559 [71 L. Ed. 1202, 47 S. Ct. 746] (1927); *Hester v. United States,* 265 U. S. 57 [68 L. Ed. 898, 44 S. Ct. 445] (1924).

*See also State v. Poe,* 74 Wn.2d 425, 445 P.2d 196 (1968); *State v. Sullivan,* 65 Wn.2d 47, 395 P.2d 745 (1964); *State v. Brooks,* 57 Wn.2d 422, 357 P.2d 735 (1960).

Appellants tacitly concede, as they must, that if the officers could, and we hold they could, validly take cognizance of what they observed in the rear seat area of the Oldsmobile and of the gun which was dislodged when appellant Regan stepped out of the automobile, then there was probable cause to arrest appellants for either grand larceny or burglary. By this time, the officers knew that appellants and their vehicle were strangers in the area, that appellants appeared to be armed, that the license plates on the vehicle had been changed, and that the items in the mesh sack on the rear seat of the vehicle had come from an address located close to where the vehicle had been originally observed. Under these circumstances there can be no question but that a reasonably prudent and a cautious disinterested person would conclude that appellants had committed or were engaged in committing a felony. *Cf. State v. Sullivan, supra; State v. Brooks, supra.*

Such being the case, the warrantless arrest for a felony was made with probable cause and constituted a lawful arrest. It follows that the subsequent though contemporaneous search of the Oldsmobile and the seizure of the various items were constitutionally permissible. *State v. Wilson,* 70 Wn.2d 638, 424 P.2d 650 (1967).

The trial court did not err in denying appellant's motion to suppress these items.

By their second primary contention, appellants assert that the prosecuting attorney committed prejudicial error in referring to the items found in the rear seat area of the Oldsmobile as being the fruits of a burglary. They contend that the import of the remarks was to attribute to appellants the crime of burglary, although they were being tried only for grand larceny.

We find no reversible error arising out of this contention.

Subsection 5 of RCW 9.54.010, the statute under which appellants were charged, reads:

> Every person who, knowing the same to have been so appropriated, shall bring into this state, or buy, sell, receive or aid in concealing or withholding any property wrongfully appropriated, whether within or outside of this state, in such manner as to constitute larceny under the provisions of this chapter—
>
> Steals such property and shall be guilty of larceny.

■ Under the instructions of the court, to which appellants took no exceptions, it was incumbent upon the prosecution to satisfy the jury beyond a reasonable doubt that the property found in possession of the appellants was wrongfully appropriated from the owner, that appellants knew it had been so appropriated, and that appellants intended to withhold and deprive the owner of such property. To this end, the prosecution was entitled to establish, and upon the basis of the evidence argue, that the property had, in fact, been stolen, and that the appellants, being in proximity to the place from whence it was stolen at about the time it was taken, had knowledge of the theft. *State v. Carden,* 50 Wn.2d 15, 308 P.2d 675 (1957); *State v. Holman,* 58 Wn.2d 754, 364 P.2d 921 (1961). Concerning a similar contention, in *State v. Carden, supra,* we said, at 17:

> From a reading of § 3 [RCW 9.54.010] in its entirety, it is obvious that larceny may be committed in a number of different ways. Although the state may not be able to prove that a defendant had physically removed certain property from the possession of the owner, the statute provides that, on proof of certain other acts (*inter alia,* aiding in concealing or withholding property known to have been wrongfully appropriated), the defendant "Steals such property and shall be guilty of larceny."

> We hold that, if one or more of the acts referred to in § 3(5) [RCW 9.54.010(5)] can be established, it is proper to charge under that subsection, even though evidence is presented that the defendant also performed the act of taking the property from the possession of the owner. There could be no more convincing evidence as to the element of knowledge that the property was wrongfully

appropriated than proof that the defendant himself had stolen it. *State v. Kruger* (1927), 145 Wash. 654, 261 Pac. 383.

Although the prosecuting attorney may have been slightly remiss in characterizing the theft of the property as a "burglary," we are satisfied from our review of the statement of facts that the objections of appellants' counsel, coupled with the trial court's admonitions to the jury, corrected the fault and relegated the error to a harmless category.

By their third primary claim of error, appellants urge that they were denied due process of law because they were deprived of an opportunity to inspect the Oldsmobile prior to trial for the reason that it had been released from impound. They suggest that such an inspection might have produced evidence with which to rebut the evidence concerning the defective left taillight, the change of license plates, and the presence of the ceremonial sword and revolver under the front seat.

Again, we are unable to accord merit to appellants' claim.

It is undisputed that the Oldsmobile did not belong to either appellant, but, instead, was on loan to appellant Smith from a used car dealer. It is conceded by appellants' counsel, if not appellants themselves, that the prosecution could not withhold the automobile from its true owner indefinitely. In this respect, the automobile was impounded on the evening appellants were apprehended, February 10, 1967. At their preliminary hearing on February 20, 1967, appellants informally advised the prosecuting attorney that they were desirous of inspecting the vehicle. However, such advice was not formalized into a definitive motion until April 19, 1967. In the meantime, the vehicle had been released to the owner. Normally, such a delay in formally seeking inspection of an impounded automobile belonging to another would be sufficient to defeat appellants' claim; however, the delay does not stand alone in this respect.

Appellant Smith testified at the pretrial evidentiary

hearing that when he received the automobile from the used car dealer sometime shortly before the arrest it had been checked over and found to be without lighting defects. He further stated that on the day of the arrest or the day before, the automobile had been taken to a specific service station for the purpose of repairing the taillights, which were suffering from corrosion. Appellants did not see fit to call as witnesses either the used car dealer or the service station repairman who purportedly worked on the vehicle. These witnesses not only could have verified appellant Smith's version of the condition of the taillight, if in fact the taillight was operating, but they could also have confirmed the appellants' version of the interior makeup of the automobile insofar as it related to appellants' contention that a ceremonial sword and revolver could not be placed under the front seat if, in fact, that contention be true. Likewise, appellants failed to call any witnesses from the impounding agency who may have been able to testify as to the vehicle's condition at the time it was impounded, as well as its condition upon release.

Furthermore, and with respect to the matter of changed license plates, it is undisputed that the vehicle when it came into appellant Smith's possession was equipped with dealer license plates which snapped over and hooked onto the regular license plates affixed to the vehicle, and that it was not a difficult task to remove or reattach the dealer plates. We are not convinced from appellants' arguments that a physical inspection of the automobile several weeks later would give rise to any competent evidence bearing upon whether the dealer plates had been detached and reattached on the night of appellants' arrest.

In the light of all of the circumstances, we are satisfied that appellants were not denied due process of law in being denied their belated effort to obtain an inspection of the automobile in question.

Appellant Smith, on behalf of himself and appellant Regan, in pro se briefs in support of appellants' appeal as well as their respective applications for writs of habeas

corpus, argues several assignments of error in addition to those already considered. None are meritorious.

It is first contended that the trial court erred in admitting into evidence a credit card bearing the name of the owner of the stolen property. This card was found in the wallet of one of the appellants when they were booked into the precinct station after their apprehension. A set of feeler gauges, sometimes used to force a door lock, were discovered at the same time. These were excluded from evidence by the trial court. Appellants contend the credit card, as well as the feeler gauges should have been excluded, since it, like the feeler gauges, tended to prove appellants guilty of a burglary. We disagree. The credit card was admissible as evidence bearing upon appellants' knowledge of the ownership thereof and the property discovered in the automobile. The feeler gauges were not relevant upon this score. The trial court did not abuse its discretion in ruling as it did.

Appellants next contend that the sentence imposed is void because it was not imposed within 90 days after the denial of appellants' motion for new trial. They contend this violated Const. art. 4, § 20, requiring rendition of a decision by a superior court judge within 90 days after submission thereof. Aside from the fact that the delay was, in significant part, attributable to appellants' demand for a presentence investigation—which the trial judge advised them would consume considerable time—we have specifically held that the superior court is a court of general jurisdiction, and that nothing in the constitutional provision alluded to lessens that jurisdiction or otherwise forbids a judgment after the expiration of the 90-day period. *State v. Dooly*, 14 Wn.2d 459, 128 P.2d 486 (1942). This contention accordingly fails.

Appellants next contend that they were denied bail pending trial, pending appeal, and pending action by the Board of Prison Terms and Paroles pursuant to a parole violation detainer lodged against them. At the time appellants were charged bail was fixed in an appropriate

amount, consideration being given to their past records and the nature of the charge. Neither posted bail. After trial and conviction, and pending appeal, the amount of bail was increased and later reduced for appellant Regan, who then posted bail and was released. Meanwhile, both appellants were subject to parole violation detainers and warrants. Under this latter circumstance, neither were entitled to bail, pending disposition of the parole violation proceedings. *January v. Porter*, 75 Wn.2d 768, 453 P.2d 876 (1969). The contention lacks identifiable merit.

Appellant Smith next contends that the prison authorities have denied him access to the courts of this state by intercepting letters, restricting his access to library facilities, and prohibiting him from taking court records and other legal material to his cell. Our records belie this contention. The files in this appeal and his habeas corpus actions, including a later one filed in this court in cause No. 40076, contain many letters to and from appellant Smith revealing much and varied communication with this court and the trial court. In addition, appellant Smith, on behalf of himself and appellant Regan, has submitted, and we have considered, a 79-page pro se supplemental appeal brief and a 51-page pro se habeas corpus brief. Both contain abundant and accurate references to the transcript and statement of facts as well as many citations of and quotations from legal authorities. It is obvious that the prison authorities have not unduly restricted appellants in the preparation and presentation of their contentions.

Other perceivable claims of error made by appellants relate to purported denial of access to counsel following their arrest, claimed inadequacy of the Miranda warnings, asserted instructional errors, a challenge to the sufficiency of the evidence, and alleged insufficiency of the information. We have considered each separately and in concert, and upon the basis of the record find them to be utterly devoid of merit.

The appellants were ably represented by competent counsel, fairly tried, and justifiably convicted.

The judgment is affirmed, and the applications for writs of habeas corpus are denied.

HILL, FINLEY, and NEILL, JJ., and POYHONEN, J. Pro Tem., concur.

---

October 6, 1969. Petitions for rehearing denied.