IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF: | ) ) ) | No. 32022-7-III |
| DIANE L. WOOD | ) ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| and | ) ) | |
| ZALE K. WOOD, | ) ) | |
| Appellant. | ) | |

FEARING, J. — Zale Wood assigns error to most rulings of the trial court in his divorce action with Diane Wood, Zale's wife for forty-nine years. Since the trial court applied the correct legal standards and properly exercised its discretion, we affirm the judgment and decree of marital dissolution entered below.

FACTS

Diane and Zale Wood married on July 5, 1960 in Yakima. In 1980, the Woods purchased a Yakima County home on seventeen acres, and they resided together in the home until their separation. The couple begat and nurtured two now adult children.

Throughout most of the marriage, Zale worked in construction as a member of the Teamsters Union. He retired and began drawing a Teamsters pension in 2002, but still continued to work on occasion. The Teamsters pension was a principal retirement asset. Diane worked as a homemaker throughout the marriage. In 2009, Diane and Zale Wood separated.

### PROCEDURE

On April 7, 2009, Diane Wood filed a petition for legal separation. Diane later converted the separation petition to a divorce petition. In her petition, Diane stated that her monthly income was $577.40 in Social Security benefits and her monthly expenses were $4,516.00. Diane listed Zale's monthly income as $8,932.10.

On May 18, 2009, the trial court issued temporary orders requiring Zale Wood to pay Diane $2,221 per month in spousal maintenance and the two home mortgage payments in the aggregate of $1,779 per month. The maintenance and mortgage payments amounted to $4,000 per month. Diane continued to reside in the family home. On January 4, 2010, the trial court lowered Zale's spousal maintenance obligation to $1,190 per month, in light of his temporary unemployment. The trial court continued to order Zale to pay the two mortgage payments, and the court ordered Zale to notify Diane once he started work again or garnered unemployment benefits.

In April or May 2010, Zale Wood returned to work, but did not notify Diane or the court. On September 16, 2010, Zale suffered serious injuries in a workplace accident.

2

The injuries prevented Zale from working, and he began receiving worker compensation benefits.

On May 6, 2011, Zale Wood moved the court for an order allowing him to retrieve his personal property from the Woods' residence and holding Diane in contempt for selling the martial community's animals, without accounting for the sales. In response, Diane agreed that Zale could retrieve his personal property at any time. During oral argument before this appeals court, Zale's counsel could not answer whether Zale has garnered all of his personal property. Wash. Court of Appeals oral argument, *In re the Marriage of Wood*, 32022-7-III (June 10, 2015) at 7:40. At oral argument, Diane's counsel stated that Zale collected all of his personal property. Wash. Court of Appeals oral argument, *In re the Marriage of Wood*, 32022-7-III (June 10, 2015) at 15:50).

On May 12, 2011, Diane Wood requested an increase in maintenance. On June 1, 2011, the trial court increased Zale Wood's spousal maintenance obligation to $1,750 per month and continued the direction for Zale to pay the two mortgage payments. The court ordered Diane to provide an accounting of the proceeds from any animal sales. The trial court also ordered the parties to arrange a time for Zale to visit the Yakima property and retrieve his possessions.

On August 29, 2011, the trial court found Zale Wood in contempt for willful violation of the June 1 maintenance order. The court awarded Diane Wood $1,650 in

3

maintenance owed between June 1 and August 31; $1,300 in attorney fees due by November 30, 2011; and $500 in attorney fees due by December 31, 2011.

The marriage dissolution proceeded to trial on April 9, 2013. At trial, Diane proposed raising Zale Wood's maintenance obligation to $2,996, but relieving him of the mortgage payments. Diane filed a current benefits statement she received from the Social Security Administration, stating that her monthly benefit, after Medicare deductions, was $651, for a yearly total of $7,812.

During the quarrelsome trial, the trial court declined to consider Zale or Diane Wood's conduct regarding preservation of the financial wealth of the marital estate. The court commented:

> A lot of times in these situations people want to talk about who spent the money during the divorce, where the money went during the divorce and the truth is it doesn't matter. We are where we are and the debt is what it is as of—at least as of the date of separation. Debt incurred after separation may be the responsibility of the person incurring that debt but for money that was badly invested, poorly spent, whatever, before the separation, that's part of marriage and so we're not going to spend a lot of time talking about who spent what during the marriage because it ends up not making any difference. Like I said, you are where you are.

Report of Proceedings (RP) (Apr. 9, 2013) at 10-11. In addition to Zale claiming Diane squandered property, Diane argued that Zale lost money on gambling.

On April 10, 2013, the trial court issued an oral ruling awarding the Yakima home and acreage to Zale Wood and ordering Diane Wood to cooperate in its sale; requiring Zale to continue paying both mortgages; awarding Diane the personal property in the

4

house, except for Zale's clothes, tools, stock truck, and tractor; and granting the divorce.

The trial court further ruled:

> I'm going to equalize the income. Yes, the L&I is Mr. Wood's separate property. But when I'm considering how to divide things, I'm considering . . . what's the . . . relative financial condition of the parties and so on and this L&I . . . is designed as a replacement for income that he would have been getting and so . . . I just factor that in. So, basically it's going to be—she gets her Social Security. He gets his L&I and then the various pension payments and so on would be divided so that net they come out equal in terms of what their monthly income is. Then if . . . there's a change in the L&I, either up or down, that would by agreement of the parties, would be considered grounds for modification and so I'm ordering that when there's a determination made on the future of that L&I, if there's any change to it, then that can be brought back to Court if you can't agree on how it should be changed. You can bring it back to Court for modification of the maintenance.

RP (Apr. 10 2013) at 169. The division of the parties' combined income would begin on April 15, 2013. Zale Wood would pay $1,750 in maintenance payments per month until the couple's property sold.

On May 22, 2013, Diane Wood moved the court to hold Zale in contempt for failing to comply with the June 1, 2011 maintenance order; the August 29, 2011 contempt order; and the April 10, 2013 trial oral ruling. On May 31, 2013, the court held Zale in contempt for making untimely and incomplete maintenance payments. The court ordered him to pay $300 in back maintenance and $250 in attorney fees. Nevertheless, the trial court denied Diane's request to hold Zale in contempt for unpaid maintenance payments equivalent to her share of his pensions, noting that Diane needed to determine whether

5

she was entitled to more social security benefits before the court could finalize Zale's maintenance obligation.

On July 30, 2013, Diane Wood noted a hearing for August 9 to present proposed findings of fact and conclusions of law, and a decree of dissolution. Diane proposed a judgment against Zale for $7,986 in unpaid maintenance between February 1, 2013 and July 31, 2013. She sought future maintenance in the sum of $4,501 monthly and an award of reasonable attorney fees and costs. The findings and conclusions listed Zale's worker compensation payments as the couple's community property. On August 8, 2013, the day before the hearing, Zale Wood filed an objection to the amount of maintenance in the proposed findings, Diane Wood's request for attorney fees, and to Diane's inclusion of her separate credit cards as community liabilities.

On August 9, 2013, the court conducted a hearing to enter findings of fact, conclusions of law, and a decree of dissolution. Zale Wood informed the trial court that the Yakima property sold with a net profit of approximately $8,000. Diane stated that she contacted the social security administration, and it informed her that she was entitled to no additional benefits. The parties agreed to reduce Zale's maintenance obligation if Diane incurred more social security benefits in the future. Zale continued to object to the amount of maintenance proposed by Diane, and he argued that the maintenance calculation did not reflect a reduction in his worker compensation benefits. The trial court expressed frustration with the parties' failure to perform arithmetic calculations,

6

and he ordered them to cooperate to revise the final orders to accurately reflect Zale's current monthly income from pensions and benefits.

Two weeks later, Diane Wood rescheduled entry of the final decree of dissolution, and findings and conclusions for September 18, 2013. Diane mailed a copy of her proposed order to Zale Wood's attorney on August 21, 2013, before she rescheduled a hearing. The second version of the proposed findings still listed Zale's worker compensation benefits as community property. The second proposed decree divided the net proceeds from the sale of the house between the parties, awarded Diane $5,630 for back maintenance, and granted Diane $4,094 in future monthly maintenance. The proposed decree directed that future maintenance be reduced proportionate to the amount of payment Diane monthly receives from qualified domestic relations orders on Zale's pensions.

On September 3, 2013, Zale Wood's attorney withdrew. On September 18, 2013, the day of the second hearing for entry of the final decree, Zale moved to continue the hearing because he had yet to replace his lawyer. The trial court denied the motion to continue. Zale argued, without counsel, the merits of the entry of the findings and conclusions and contended that the facts did not support the trial court's oral ruling. Zale objected to the amount of maintenance that the trial court ordered him to pay. At the close of the September 18 hearing, the trial court entered the findings of fact, conclusions of law, and divorce decree as proposed by Diane.

7

Zale Wood obtained new counsel on September 23, 2013. On September 30, 2013, Zale moved for reconsideration, which motion the trial court denied.

## LAW AND ANALYSIS

On appeal, Zale Wood contends: (1) the trial court abused its discretion in denying Zale's motion to continue the September 18, 2013 presentment hearing, (2) the trial court violated article IV, section 20 of the Washington Constitution and RCW 2.08.240 by failing to provide Zale a final decision within ninety days of the trial, (3) the trial court abused its discretion in denying Zale a court order to retrieve personal property from the Woods' former residence, (4) the trial court abused its discretion by excluding testimony at trial regarding the parties' contributions and misconduct during their forty-nine year marriage, (5) the trial court erred in taking into consideration Zale's monthly social security and worker compensation disability benefits when calculating Diane's spousal maintenance award, (6) the trial court abused its discretion under RCW 26.09.090 in awarding spousal maintenance, and (7) the trial court abused its discretion under RCW 26.09.080 in its division of the parties' assets and liabilities. We address the contentions in such order.

*Issue 1: Whether the trial court abused its discretion in denying Zale Wood's motion to continue the September 18, 2013 presentment hearing?*

*Answer 1: No.*

We first address two purported procedural errors assigned by Zale Wood. Zale

8

argues that the trial court erred in denying his motion to continue the September 18, 2013 hearing, after his attorney withdrew on September 3, 2013. Zale argues that, even though Diane Wood complied with CR 52(b)'s requirement of giving 10-days' notice of entry of final orders to the opposing party, he lacked time to review the findings of fact and conclusions of law due to his residence in Puyallup and his attorney's withdrawal. Zale asserts prejudice as a result of the trial court's denial of his motion to continue the presentment hearing until he could hire another attorney. Diane responds that Zale's motion for a continuance was untimely and meritless, and she observes that the trial court gave Zale the opportunity to file a motion for reconsideration to correct any error in the findings of fact, conclusions of law, or dissolution decree.

This court reviews a trial court's denial of a motion for a continuance for manifest abuse of discretion. *Molsness v. City of Walla Walla*, 84 Wn. App. 393, 400, 928 P.2d 1108 (1996). A trial court manifestly abuses its discretion if no reasonable person would take the view adopted by the court. *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 85 Wn. App. 695, 709, 934 P.2d 715 (1997), *aff'd*, 135 Wn.2d 894, 959 P.2d 1052 (1998).

We hold that the trial court below did not abuse its discretion in denying Zale Wood's motion for a continuance. Although his attorney's withdrawal created inconvenience, Diane Wood provided Zale ample notice of presenting the final orders to the trial court. During the presentment hearing, Zale did not argue that orders prepared

by Diane failed to reflect the trial court's oral rulings or that Zale needed an attorney to draft a correct version of the orders to mirror the trial court's rulings. Zale instead continued his ongoing objection to the amount of maintenance the trial court ordered and the trial court's division of property. Thus, Zale was not prejudiced by the trial court's denial of his motion for a continuance, and we find no abuse of discretion in denying the motion to continue.

*Issue 2: Whether the trial court violated article IV, section 20 of the Washington Constitution and RCW 2.08.240 by failing to issue a final decision within 90 days?*

*Answer 2: No.*

Zale Wood next contends that the trial court violated article IV, section 20 of Washington's Constitution, and RCW 2.08.240 by deferring, during its April 10, 2013 oral ruling, his duty to value assets and liabilities until a later date. Zale argues that the intervening five months between the trial court's oral ruling and the entry of written findings of fact, conclusions of law, and the decree of dissolution resulted in Diane Wood, not the court, deciding the material facts and issues in the case favorable to her. He complains that the trial court failed to assign value to the family residence, household goods, personal property, or liabilities of the parties, which failure misled him to conclude his divorce was not final.

Diane Wood responds that the parties understood the trial court's oral ruling as shown by Zale's listing and selling the Yakima property prior to entry of the final decree

10

of dissolution and in compliance with the oral ruling. She maintains that the only dispute unresolved after trial was whether she might be eligible for an increase in social security benefits. Diane observes that Zale never objected to the trial court's direction that the parties sell their home and gather more information about Diane's social security benefits before presenting final orders.

Article IV, section 20 of Washington's Constitution provides, in relevant part: "Every cause submitted to a judge of a superior court for his decision shall be decided by him within ninety days from the submission thereof." RCW 2.08.240 repeats this command.

Zale Wood may argue that the trial court's failure to enter a final order within ninety days of its oral ruling in April 2013 automatically voids the decree of dissolution. The law is to the contrary. The superior court is a court of general jurisdiction, and nothing in the constitutional provision lessens that jurisdiction or otherwise forbids a judgment after the expiration of the ninety-day period. *State v. Regan*, 76 Wn.2d 331, 341, 457 P.2d 1016 (1969); *State v. Dooly*, 14 Wn.2d 459, 467, 128 P.2d 486 (1942). The mere fact that the judgment was not rendered within ninety days does not of itself constitute error on which the judgment may be reversed. *Moylan v. Moylan*, 49 Wash. 341, 344, 95 P. 271 (1908). Reviewing courts are even less inclined to reverse a tardy judgment if the trial court makes an oral ruling at the close of trial. *See W. Philadelphia Title & Trust Co. v. City of Olympia*, 19 Wash. 150, 155, 52 P. 1015 (1898).

11

Even assuming violation of the constitutional deadline for decision voids a ruling, the trial court does not violate the rule if the parties fail to timely present orders or if the trial court seeks additional information from the parties. An old, but controlling decision, is *West Philadelphia Title & Trust*, 19 Wash. at 151-52, a commercial paper case. W.J. Casebeer sought to enforce warrants against the City of Olympia and paid to him by a company contracted by the city to grade and improve its streets. The trial court made an oral ruling in favor of the city on July 3, 1891, but did not enter findings of fact and conclusions of law until January 23, 1892. Casebeer sought to have the judgment vacated on appeal on the basis that the trial court failed to file the findings and conclusions within ninety days as provided in the Washington Constitution. Our Supreme Court disagreed, while noting that the trial court made an oral ruling at the close of trial that could have been reduced to judgment at any time. *W. Philadelphia Title & Trust*, 19 Wash. at 155. The language of the constitutional provision has not changed since the state constitution's adoption in 1889.

Zale Wood's trial court issued an oral ruling at the close of the Woods' marital dissolution trial, and the court entered final findings and conclusions approximately five months later. The trial court was willing to sign findings of fact, conclusions of law, and a final order within weeks, if not days, of its April oral ruling. The parties dallied in obtaining important information needed to finalize the dissolution. In the meantime, Zale violated court orders necessitating contempt motions. Zale Wood caused much of the

12

delay. Zale objected to Diane's first attempt to present final orders in August 2013. He then tried to delay again by moving for a continuance on the day of the second presentment hearing. Zale cannot now, on appeal, claim an error to which he himself contributed, and in fact seemed to endorse. *See State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). The trial court's delay in entering findings of fact and conclusions of law do not warrant reversal of the written orders.

*Issue 3: Whether the trial court abused its discretion in denying Zale Wood a court order to retrieve personal property from the Woods' former residence?*

*Answer 3: We refuse to address this assignment of error since Zale Wood provided no argument in his appeal brief.*

Zale Wood assigns error to the trial court's denial of his request for a court order to retrieve personal property from the Woods' former residence. Nevertheless, Zale presents no argument in support of this assignment of error. RAP 10.3(a)(6) provides that an appellate brief should contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Assignments of error not argued or further referred to in a brief or orally are treated as abandoned by an appellant. *Talps v. Arreola*, 83 Wn.2d 655, 657, 521 P.2d 206 (1974).

We note that the trial court granted Zale Wood possession of his personal property. If he has not garnered the possessions due to the fault of Diane, he remains free

13

to enforce the order.

*Issue 4: Whether the trial court abused its discretion by excluding testimony regarding the parties' contributions and misconduct during their forty-nine year marriage?*

*Answer 4: No.*

Zale Wood contends the trial court abused its discretion by excluding evidence of the Woods' respective contributions to the marital estate and each party's conduct in preserving or wasting community assets. A trial court may consider gross fiscal improvidence, the squandering of marital assets, or the deliberate and unnecessary incurring of tax liabilities in dividing the assets and liabilities of a marital estate. *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991). Stated differently, the trial court has discretion to consider whose negatively productive conduct depleted the couple's assets and to apportion a higher debt load or fewer assets to the wasteful marital partner. *In re Marriage of Williams*, 84 Wn. App. 263, 270-71, 927 P.2d 679 (1996). Because the trial court has discretion, the trial court may ignore any waste of assets. In *Marriage of Williams*, the trial court ignored, when distributing marital property, the wife's squandering of $12,000 through gambling debts.

The Wood trial court did not consider the parties' financial behavior in dividing the marital estate. The trial court encountered enough difficulty preventing the parties from arguing with each other in open court about whether one slept with someone else or

14

lied. In a contentious trial, the court did not abuse its discretion by preventing the proceeding from degenerating into bickering about waste of the couple's assets.

If the trial court wished to consider the parties' financial conduct, the trial court could have awarded Diane more because of Zale's purported gambling. Also, if the couple's history was such that Zale Wood contributed to the financial success of the two and Diane squandered financial assets, this history could harm Zale in the end. Diane's inability to handle money could lead the judge to award her a higher sum so that her needs are met despite her waste. Thus, Zale should be happy that the trial court excluded evidence of waste.

A principal factor for the trial court to consider when dividing marital assets is the economic circumstances of each spouse at the time the division of the property is to become effective. RCW 26.09.080(4). The trial court's paramount concern when distributing property in a dissolution action is the economic condition in which the decree leaves the parties. *In re Marriage of Gillespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997). The court may consider the parties' prospects for future earnings, their education and employment histories, their necessities and financial abilities, their foreseeable future acquisitions and obligations. *Friedlander v. Friedlander*, 80 Wn.2d 293, 305, 494 P.2d 208 (1972); *Gillespie*, 89 Wn. App. at 399. Thus, Washington law parrots the slogan made famous by Karl Marx: from each according to his or her ability, to each according to his or her needs.

15

*Issue 5: Whether the trial court erred in taking into consideration Zale Wood's social security and L&I disability benefits when calculating spousal maintenance?*

*Answer 5: No.*

Zale Wood contends the trial court improperly considered his social security and worker compensation benefits in its calculation of Diane's award of lifetime spousal maintenance. He argues that social security benefits are the separate and indivisible property of the spouse who earned them and are not marital property subject to division or weight when awarding maintenance. He also argues that his worker compensation benefits are his separate property, and the trial court abused its discretion in awarding Diane fifty percent of those benefits. Diane contends that the trial court merely considered Zale's social security and worker compensation benefits when evaluating the relative incomes of the two parties in calculating the amount of maintenance needed in order to "equalize" the parties' incomes. She argues that the court did not abuse its discretion, because it did not actually attach or assign Zale's social security or worker compensation benefits to Diane. We agree with Diane.

RCW 26.09.090 governs awards of spousal maintenance. The statute provides, in relevant part:

> (1) In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse. . . . The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:

(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently. . . .

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage . . .

(d) The duration of the marriage . . .

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090.

This court reviews the trial court's award of maintenance for abuse of discretion. *In re Marriage of Zahm*, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999). An award of maintenance that is not based on a fair consideration of the statutory factors constitutes an abuse of discretion. *In re Marriage of Crosetto*, 82 Wn. App. 545, 558, 918 P.2d 954 (1996). Ultimately, the court's main concern must be the parties' economic situations post-dissolution. *In re Marriage of Williams*, 84 Wn. App. at 268 (1996). The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of relevant factors, the award must be just. *In re Marriage of Bulicek*, 59 Wn. App. 630, 633, 800 P.2d 394 (1990).

Zale Wood correctly notes that a spouse's right to receive social security benefits is nontransferable and nonassignable. 42 U.S.C. § 407(a); *In re Marriage of Zahm*, 138

17

Wn.2d at 220-21. Nevertheless, our Supreme Court has held that a trial court may consider divorcing spouses' social security benefits when fashioning a just and equitable maintenance award. *Zahm*, 138 Wn.2d at 227. Consideration of such benefits aids the trial court in determining the relative needs of the parties and their respective ability to pay maintenance. *Zahm*, 138 Wn.2d at 223.

In *Zahm*, 138 Wn.2d at 227, our state high court upheld a trial court's decision to consider, when establishing an award of maintenance, the social security benefits to which a divorcing spouse was entitled. The *Zahm* court first held that a trial court does not abuse its discretion by mischaracterizing social security benefits as community property, so long as the court does not actually attempt to assign one spouse's future social security benefits as part of an equitable division of property in a divorce proceeding. *Zahm*, 138 Wn.2d at 220-21. The court applied this same reasoning when upholding the trial court's maintenance award.

The trial court below did not assign a portion of Zale or Diane Wood's social security benefits in its division of the parties' community property and liabilities. Although Diane included both Zale's and her social security incomes in her initial estimate of the parties' total combined income, the trial court stated that it used such information to help evaluate the relative positions of the parties in fashioning an award of maintenance to Diane. The *Zahm* court held such an analysis permissible. Therefore, the trial court did not abuse its discretion in considering the parties' social security benefits

18

when fashioning its maintenance award for Diane Wood.

Zale Wood repeats the same argument regarding his worker compensation benefits and his union pension, but again the argument fails. Washington's Industrial Insurance Act Title 51 RCW does not allow garnishment of disability benefits for the purpose of satisfying a spousal maintenance obligation. RCW 51.32.040(1). Nor does it allow assignment of those benefits for the purpose of dividing marital property. *In re Marriage of Dugan-Gaunt*, 82 Wn. App. 16, 19-20, 915 P.2d 541 (1996). A disability pension resulting from a disability occurring after permanent separation should be characterized as separate property of the disabled spouse but may be considered as affecting his ability to pay alimony. *In re Marriage of Huteson*, 27 Wn. App. 539, 542, 619 P.2d 991 (1980).

The written findings' characterization of Zale Wood's worker compensation benefits as being community property may be a clerical error. Diane Wood agreed the benefits were separate property. In its oral ruing, the trial court recognized the benefits as separate property. Even if the error was not clerical in nature, reversal is not needed.

As taught in *In re Marriage of Zahm*, 138 Wn.2d 213 (1999) and *In re Marriage of Huteson*, 27 Wn. App. 539, mischaracterization of separate property as community property does not, on its own, render a subsequent division of property, or order of maintenance, unjust and inequitable. Although the trial court mischaracterized Zale's worker compensation benefits, the final divorce decree does not award the payments to Diane, nor does the decree garnish the benefits for the purpose of paying maintenance. In

19

the trial court's equitable award, an increase or decrease in worker compensation benefits accordingly increases or decreases the spousal maintenance.

RCW 26.09.090 directs the trial court to fashion a just award of maintenance. Diane remained at home, during the parties' lengthy marriage, to care for the children and tend the household. Diane's work at home allowed Zale to work in jobs where he accumulated pensions and a higher amount for social security. Diane expected to live in retirement based in part on Zale's pension and social security benefits. The trial court did not abuse its discretion by considering the worker compensation benefits when establishing Zale's maintenance obligation to Diane.

*Issue 6: Whether the trial court abused its discretion under RCW 26.09.090 in awarding spousal maintenance?*

*Answer 6: No.*

Zale Wood next assigns error to the trial court awarding spousal maintenance. This assignment of error differs from the preceding assignment in that Zale now argues the trial court should not have awarded any maintenance. He argues, in part, that the trial court failed to consider his poor health and need for surgery. Diane Wood responds that the trial court considered all relevant statutory factors before awarding maintenance. We agree with Diane.

Our previous discussion quoted the spousal maintenance statute, RCW 26.09.090, and the factors on which the trial court should grant maintenance. We review the trial

20

court's decision on an award of maintenance for abuse of discretion. *In re Marriage of Zahm*, 138 Wn.2d at 226-27 (1999). Ultimately, the court's main concern must be the parties' economic situations postdissolution. *In re Marriage of Williams*, 84 Wn. App. at 268 (1996). The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of relevant factors, the award must be just. *In re Marriage of Bulicek*, 59 Wn. App. at 633 (1990).

The trial court concluded in its final marital dissolution decree that "[a]ll statutory factors exist for an award of maintenance to wife." CP at 193. The trial court did not abuse its discretion in so ordering. During a disorganized and volatile trial and several contempt hearings, the trial court heard testimony regarding both parties' health and financial situations, and the couple's community and separate debts. The trial court sought to place each in the same financial situation by ordering Zale Wood to pay maintenance to Diane. The final decree orders maintenance for life, but directs that maintenance be modified depending on Zale's worker compensation benefits. In addition, the maintenance of $4,094 per month is reduced by the amount Diane receives from Zale's pensions. Given the length of the parties' marriage, the disparity of income between the two, and the provision reducing maintenance relative to the property division, the trial court did not abuse its discretion.

*Issue 7: Whether the trial court abused its discretion under RCW 26.09.090 when dividing the marital estate?*

21

*Answer 7: No.*

Zale Wood next assigns error to the trial court's division of property. He argues

that the trial court failed to assign values to all assets before dividing them. Diane Wood

contends that the trial court considered all relevant statutory factors before dividing

property. She also observes that Zale Wood contributed to any potential error in the trial

court's calculations because he failed to provide valuations of properties. Once again, we

agree with Diane.

RCW 26.09.080 governs disposition of marital property. The statute provides, in

relevant part:

> In a proceeding for dissolution of the marriage . . . the court shall,
> without regard to misconduct, make such disposition of the property and
> the liabilities of the parties, either community or separate, as shall appear
> just and equitable after considering all relevant factors including, but not
> limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner
> at the time the division of property is to become effective.

RCW 26.09.080.

As with an award of maintenance, this court reviews the division of property for

an abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d

779 (2005). The trial court has broad discretion, which will only be reversed if exercised

on untenable grounds or for untenable reasons. *In re Marriage of Rockwell*, 141 Wn.

22

App. 235, 242-43, 170 P.3d 572 (2007). We recognize that the trial court sits in the best position to assess the assets and liabilities of the parties and to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

A just and equitable division does not require mathematical precision, but rather fairness, based on a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties. *In re Marriage of Larson & Calhoun*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013), *review denied sub nom., In re Marriage of Larson*, 180 Wn.2d 1011, 325 P.3d 913 (2014); *In re Marriage of Crosetto*, 82 Wn. App. at 556 (1996). In a long-term marriage of twenty five years or more, the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives. *Rockwell*, 141 Wn. App. at 243.

Diane Wood received approximately $600 per month in social security benefits, while Zale Wood received roughly three times that amount, plus pension and worker compensation benefits. The major asset accumulated for retirement was Zale's pension benefits. The trial court divided Zale's pensions between the parties. The court ordered the Woods' Yakima property sold to pay off its outstanding mortgages, and for the parties to divide the net proceeds from the sale. It awarded some household items and personal property to Zale, including the stock truck, tractor, farm implements he requested, and his personal papers.

Although the trial court based its property division on calculations provided by Diane, Zale had multiple opportunities to present different calculations or propose a different division, but he did neither. Any failure of the trial court to exercise mathematical precision in its division of the Woods' property resulted from Zale Wood's intransigence in producing documentation requested by Diane and the court. Under these circumstances, the trial court did not abuse its discretion in its division of the marital estate.

*Issue 8: Whether Zale or Diane Wood is entitled to attorney fees on appeal?*

*Answer 8: No.*

Zale and Diane Wood each request an award of reasonable attorney fees on appeal under RCW 26.09.140. Diane also seeks an award of fees under CR 11. We deny each party's request for fees.

RAP 18.1(a) permits a party to recover attorney fees on appeal if an applicable law grants the party that right, and the party includes a request for fees in its brief. RCW 26.09.140 provides, in relevant part:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

In determining whether to award fees under RCW 26.09.140, this court examines the arguable merit of the issues on appeal and the financial resources of the respective parties. *In re Marriage of King*, 66 Wn. App. 134, 139, 831 P.2d 1094 (1992). Because of the equal division of assets and spousal maintenance awarded Diane Wood, we find that each party has the wherewithal to pay his or her attorney fees.

Diane Wood also contends that this court could award her attorney fees and costs under CR 11 for a frivolous appeal. This court abides by the following considerations when determining whether an appeal is frivolous:

(1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980); *see also Griffin v. Draper*, 32 Wn. App. 611, 616, 649 P.2d 123 (1982).

Most of Zale Wood's arguments are frivolous, but we find at least one assignment of error that contains a debatable issue. Some law supports Zale's contention that the trial court could consider Diane's waste of assets when distributing the parties' property.

No. 32022-7-III
*In re the Marriage of Wood*

CONCLUSION

We affirm all rulings of the trial court. We deny each party an award of

reasonable attorney fees.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.

26